**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ROWEN PETROLEUM PROPERTIES, LLC, | | |
| Plaintiff, | CIVIL NO. 08-4764(NLH)(AMD) | |
| v. | | |
| HOLLYWOOD TANNING SYSTEMS, INC., HOLLYWOOD TANS, LLC, HT SYSTEMS, LLC, TAN HOLDINGS, LLC, RALPH VENTO, SR., RALPH VENTO, JR., DAVID N. RAHN, INDIVIDUAL DEFENDANTS 1 THROUGH 10, Defendants. | **OPINION** | |

**APPEARANCES:**

Ronald L. Davison, Esquire
Starr, Gern, Davison & Rubin, PC
105 Eisenhower Parkway
Roseland, NJ 07068
     *On behalf of plaintiff*

Frank C. Testa, Esquire
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, NJ 08540
     *On behalf of defendants Hollywood Tanning Systems, Inc., Ralph Vento, Sr., Ralph Vento, Jr., David N. Rahn*

Francis P. Maneri, Esquire
James Bradford Mc Ilvain, Esquire
Dilworth Paxson, LLP
3200 the Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
     *On behalf of defendants Hollywood Tans, LLC, HT Systems, LLC, Tan Holdings, LLC*

**HILLMAN**, District Judge

     This matter, concerning the lease of space in a mall by a Hollywood Tans franchise, has come before the Court on defendants' motions to dismiss all of plaintiff's claims against them.  For the

reasons expressed below, defendants' motions will be denied except as to Hollywood Tans, LLC.  In addition, the Court will direct the parties to undertake jurisdictional discovery to establish concretely this Court's subject matter jurisdiction over plaintiff's claims against defendants Tan Holdings, LLC and HT Systems, LLC and to amend the pleadings accordingly.

## I.  BACKGROUND

On June 26, 2005, defendant Hollywood Tanning Systems, Inc. ("HTS") leased space in a mall in Pittsburgh to operate a Hollywood Tans tanning salon.  The lease was for ten years and was entered between Falls Creek Development and HTS.  In February 2006, plaintiff Rowen Properties ("Rowen")[1] purchased the shopping mall from Falls Creek Development.  As a result, Rowen became the landlord of HTS.

According to Rowen's complaint, on or about May 31, 2007, HTS sold all or a portion of its assets to defendant Tan Holdings pursuant to an asset purchase agreement ("APA").  In that same month, HTS contacted Rowen for approval of an assignment of their lease to Tan Holdings.  According to the terms of the lease, HTS was permitted to assign the lease to another tenant "whose net worth is equal to or exceeds" HTS's.  To that end, Rowen received a

---

[1]It appears that Brendan J. Rowen is the sole member of plaintiff Rowen Petroleum Properties, LLC.  Therefore, the Court will refer to plaintiff as "he."

2

document titled "Tan Holdings, LLC (formerly Hollywood Tanning Systems, Inc.) Projected Opening Balance Sheet," dated May 31, 2007, which represented that Tan Holdings had substantial net assets.  Rowen reviewed this document, as well as a "Form of Assignment and Assumption Agreement," which was between HTS and Tan Holdings and had the effect of HTS assigning to Tan Holdings all of HTS's rights under the lease, and Tan Holdings agreeing to assume and be bound to perform the obligations of the tenant under the lease.  Based on these documents, Rowen approved the assignment of the lease as between HTS and Tan Holdings.  On May 14, 2007, Rowen received the Assignment of Lease and a form "Acknowledgement, Agreement and Consent" for his signature.  According to Rowen, he signed these documents based on the parties' prior conversations and prior documents he reviewed.

Rowen came to discover, however, that the Assignment of Lease did not indicate an assignment between HTS and Tan Holdings, but rather between HTS and defendant HT Systems.  Rowen admits that he did not read the Assignment before signing the Acknowledgment because all previous discussions and documents concerned Tan Holdings, and not HT Systems.  Rowen was never provided financial information regarding HT Systems, and the defendants never informed him of the change.  Rowen also claims that he would have never approved HT Systems as an assignee of the lease because HT Systems was essentially a shell company, was undercapitalized, and lacked

the financial resources to assume and discharge its obligations under the lease.  Based on this conduct, Rowen claims that he was fraudulently induced into approving the assignment, and that it also constituted a fraudulent conveyance.  He brings fraud claims against HTS, Tan Holdings, HT Systems, Hollywood Tans, LLC and the individual members of HTS and HT Systems.

Rowen has also asserted a breach of contract claim against HTS and HT Systems.  At some point following the assignment of the lease, HTS and/or HT Systems failed to pay rent and other charges for more than $950,000.  Notwithstanding any fraud issues, Rowen claims that pursuant to the lease, HTS remained primarily liable under the lease for the remainder of its term.  Further, Rowen represents that on June 22, 2007, pursuant to the APA between HTS and Tan Holdings, HTS and HT Systems entered into an assignment of lease, whereby HTS assigned its rights under the lease to HT Systems.  Thus, Rowen claims that both HTS and HT Systems, as well as the yet-to-be-identified individual members of HT Systems, are liable for breach of contract.

All defendants have moved for the dismissal of Rowen's claims against them.  Rowen has opposed these motions.

## II. DISCUSSION

### A.  Jurisdiction

Plaintiff alleges that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete

4

diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  As discussed below, see *infra* note 11, the Court will direct the parties to undertake expedited jurisdictional discovery to determine the citizenship of HT Systems and Tan Holdings.

**B.   Motion to Dismiss Standard**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

5

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an

6

undisputedly authentic document that a defendant attaches as an
exhibit to a motion to dismiss if the plaintiff's claims are based
on the document."   <u>Pension Benefit Guar. Corp. v. White Consol.
Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).   If any other
matters outside the pleadings are presented to the court, and the
court does not exclude those matters, a Rule 12(b)(6) motion will
be treated as a summary judgment motion pursuant to Rule 56.   Fed.
R. Civ. P. 12(b).

**C.   Analysis**

Defendants advance four main arguments for why all of
plaintiff's claims should be dismissed.   First, defendants argue
that even taking as true plaintiff's claims that a bait and switch
occurred with regard to the substitution of HT Systems for Tan
Holdings in the lease assignment, plaintiff is a savvy businessman
who should have read the two page document prior to signing the
Acknowledgment.   If he had read the assignment, he would have seen
that HT Systems was named, rather than Tan Holdings.   Defendants
argue that he cannot claim fraud due to his own failure to read the
contract he signed.   Second, defendants argue that plaintiff has
not pleaded his fraud claim with sufficient specificity as required
by Federal Civil Procedure Rule 9(b).   Correspondingly, defendants
HTS and the individual defendants argue that plaintiff's fraudulent
conveyance claim fails due to insufficient pleading, and fails as a

matter of law.  With regard to plaintiff's breach of contract claims, defendant HTS argues that plaintiff's breach of contract claim must be dismissed because the plain language of the lease and assignment does not support its liability for HT Systems' alleged default of the lease.[2]

### 1.   Plaintiff's fraud claims

The standard for establishing a claim of common law fraud, fraudulent misrepresentation, and fraudulent inducement is the same:  a plaintiff must prove (1) a material misrepresentation of a presently existing or past fact, (2) with knowledge of its falsity and with the intention that the other person rely on it, and that there was in fact both (3) reasonable reliance and (4) resulting damages.  Banco Popular N. Am. v. Gandi, 876 A.2d 253, 260 (N.J. 2005); Jewish Center of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981).[3]  Defendants argue that plaintiff cannot claim he

---

[2]Defendant HT Systems has not moved to dismiss plaintiff's breach of contract claim against it.

[3]Plaintiff and defendants HTS and the individual defendants maintain that New Jersey law applies, while the other defendants assert that Pennsylvania law applies based on a choice of law provision in the lease assignment.  The Assignment of Lease states, "The Assignment shall be governed and construed in accordance with the laws of the state in which the Premises is Located."  The premises at issue is located in Pennsylvania.
First, the Court finds that the choice of law provision in the Assignment of Lease is inapplicable to plaintiff's fraud claims because the Assignment of Lease was entered between HTS and HT Systems.  Plaintiff signed a separate acknowledgment consenting to the Assignment of Lease, which did not contain any choice of law provision.  Thus, the choice of law provision in

reasonably relied on the representations of defendants with regard to the identity of the assignee of the lease such that it absolves plaintiff's duty to have read the contract before he signed it. Because plaintiff cannot prove an element of his fraud claim, defendants argue that it must be dismissed.

Defendants' arguments are not availing at this motion to dismiss stage.  It is true that a party has a duty to read and examine a contract that he signs, and "one who does not choose to read a contract before signing it, cannot later relieve himself of its burdens."  Henningsen v. Bloomfield Motors, Inc., 161 A.2d 69, 84 (N.J. 1960).  This principle, however, is not absolute, particularly in the case of fraud.  Id.; Harr v. Allstate Insurance

---

the Assignment only affects any claims HTS and HT Systems may assert against each other with regard to the assignment.
     Second, the Court finds that with regard to plaintiff's fraud claims, New Jersey law applies because the alleged fraudulent activity occurred in New Jersey by New Jersey defendants (the currently-undisputed citizenship of all defendants).  See Robeson Industries Corp. v. Hartford Acc. & Indem. Co., 178 F.3d 160, 165 (3d Cir. 1999) (stating that New Jersey choice of law analysis governs because a court sitting in diversity must follow the substantive choice-of-law rules of the forum state); Gantes v. Kason Corp., 679 A.2d 106, 109 (N.J. 1996) (stating that New Jersey's choice-of-law rule applies a flexible "governmental-interest" standard, which requires application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation); Nubenco Enterprises, Inc. v. Inversiones Barberena, S.A., 963 F. Supp. 353, 373 (D.N.J. 1997) (holding and citing cases that choice of law provision in contract does not apply to extra-contractual torts).
     The law applied to plaintiff's breach of contract claim is discussed in the Court's analysis of defendants' motion to dismiss that claim, *infra* at page 17.

<u>Co.</u>, 225 A.2d 228, 207 (N.J. 1969) (discussing the fraud exception to the general rule of a duty to read); <u>Dunston Lithograph Co. v. Borgo,</u> 84 N.J.L. 623, 625, 87 A. 334, 335 (N.J. Err. & App. 1913) ("Although, as a general rule, the affixing of a signature to a written contract creates a conclusive presumption against the signer that he read, understood, and assented to its terms, this rule has one notable exception, viz., where the signature to the contract was procured by fraud or imposition practiced upon the signer with intent to deceive him as to the purport of the paper which he signs. . . . And this is so notwithstanding that he might have discovered the fraud perpetrated upon him by reading the paper, and was guilty of negligence in not doing so."); <u>see also Peter W. Kero, Inc. v. Terminal Const. Corp.,</u> 6 N.J. 361, 369, 78 A.2d 814, 817-18 (N.J. 1951) ("It is well settled that where a party is induced to sign a release by reason of a misrepresentation intended to deceive him as to its purport or content, the signer has a right to set up such fraud or imposition in avoidance of such release when there is an attempt to use it against him by the releasee, even though the signer might have discovered the fraud perpetrated upon him by reading the paper and was negligent in omitting to do so."); <u>Maddaluna v. DTD Enterprises, Inc.,</u> 2007 WL 1518289, *3+ (N.J. Super. App. Div. May 25, 2007) (citing <u>Kero</u>); <u>Bidic v. Prudential Ins. Co. of America</u>, 1987 WL 7838, *3, 42 Fair Empl. Prac. Cas. (BNA) 1418 (D.N.J. Jan 20, 1987) (citing <u>Kero</u>).

Defendants are also correct that even with this fraud exception, a party cannot avail himself of the exception unless he reasonably relied on the allegedly fraudulent representation.  See, e.g., Andrea v. Metropolitan Life Ins. Co., 2000 WL 35361960, *3 (D.N.J. 2000).  For example, in Andrea, the plaintiff claimed that an insurance sales representative told him that the insurance policy he purchased would remain in effect until he reached the age of ninety-nine and that the premiums would never increase.  The plaintiff purchased the policy in 1989, and then discovered in 1996 that the representations were false.  The plaintiff admitted to never reading the policy, but attempted to avail himself of the fraud exception.  The court dismissed the plaintiff's fraud claim, holding, "It is clear in this case that even a quick perusal of the Policy would have alerted the average person under these circumstances that the terms of the Policy contradicted [the insurance sales representative's] alleged representations. [Plaintiff] may have then known that something was 'rotten in the state of Denmark.'"  Andrea, 2000 WL 35361960 at *3.

The case here is different from Andrea, however, because the Court cannot conclude as a matter of law that plaintiff has failed to state a claim for reasonable reliance.  Where in Andrea the plaintiff never, in eight years, read his insurance document to confirm that the representations of the salesman were included in the document, here, just before signing the Assignment of Lease,

11

which was prepared by defendants, plaintiff read various documents which stated that Tan Holdings was to be the assignee of HTS's lease.  Prior to signing the Assignment of Lease, plaintiff received a document titled "Tan Holdings, LLC (formerly Hollywood Tanning Systems, Inc.) Projected Opening Balance Sheet," which represented that Tan Holdings had substantial net assets. Plaintiff also received and reviewed "Form of Assignment and Assumption Agreement," which was between HTS and Tan Holdings and had the effect of HTS assigning to Tan Holdings all of HTS's rights under the lease, and Tan Holdings agreeing to assume and be bound to perform the obligations of the tenant under the lease. Plaintiff claims that when he received the Assignment of Lease from defendants, he was never informed that Tan Holdings was no longer the assignee.  Further, plaintiff claims that he never received any financial or other information regarding HT Systems that would have alerted him that any entity other than Tan Holdings was going to assume the lease.  Even though plaintiff could have discovered that HT Systems was listed as the assignee rather than Tan Holdings by simply reading the Assignment of Lease defendants sent him, taking as true plaintiff's assertions in his complaint, nothing in the parties' prior communications would have alerted plaintiff that Tan Holdings was not the entity listed on the Assignment as prepared by

defendants.[4]  Indeed, as explained by the New Jersey Supreme Court,

> [W]here a party is induced to sign a paper as a result of
> a false representation that it will be filled in or
> prepared as orally agreed, the intentional omission of
> terms required by the authorization to be included, or
> the inclusion of terms not so authorized, constitutes
> fraud invalidating the instrument as between the parties
> thereto, notwithstanding that the party signing was
> negligent in relying on the misrepresentation. The rule
> is that where one party to an oral agreement entrusts the
> other with the obligation of reducing it to writing, he
> has a right to rely upon the representation that it will
> be drawn accurately and in accordance with the oral

---

[4]This case is more like Bonnco Petrol, Inc. v. Epstein, 560
A.2d 655, 661 (N.J. 1989).  In Bonnco, the parties negotiated an
option contract with regard to a real estate purchase.  During
those negotiations, the realtor provided the Epsteins with sample
contracts to follow.  After negotiations, the realtor drafted the
contract under the instruction from the Epsteins that the
contract conform to the samples.  The realtor, however, included
a term that the parties had not negotiated.  The realtor did not
inform the Epsteins of the term, and the Epsteins did not
thoroughly read the contract.  The trial court found that the
realtor "misrepresented, sub silentio, that the agreement signed
by the Epsteins conformed with the earlier samples. Silence in
the face of an obligation to disclose amounts to equitable
fraud."  Bonnco, 560 A.2d at 661.  The court also found that it
was not unreasonable for the Epsteins to rely on the realtor to
properly to memorialize their prior understanding with respect to
the option.  Id. (citing Kero v. Terminal Constr. Co., 78 A.2d
814 (1951)).  The trial court found that the realtor did not
present the Epsteins with a written agreement to sign that
mirrored the parties' prior oral understanding.  "Thus, it
matters little that they failed to read the agreement carefully
before signing."  Id. "'One who engages in fraud . . . may not
urge that one's victim should have been more circumspect or
astute.'"  Id. (quoting Jewish Center of Sussex County v. Whale,
432 A.2d 521, 524 n.1 (N.J. 1981)).

understanding between them.  The presentation of the paper for signature is in itself a representation that the terms of such oral agreement have been or will be embodied in the writing.  It is the policy of the law to protect the unwary and foolish as well as the vigilant from the wiles and artifices of evil-doers and negligence in trusting a representation will not, according to the greater weight of authority, excuse a positive willful fraud, and parole evidence is admissible to show such fraud.  The party perpetrating the fraud should not be permitted to say that he should not have been believed or trusted.

Peter W. Kero, Inc. v. Terminal Const. Corp., 78 A.2d 814, 818 (N.J. 1951).

Whether it was reasonable for plaintiff to rely on the prior writings and representations and not read the Assignment of Lease before signing the Acknowledgment is a determination that cannot be made at the motion to dismiss stage.  At this stage, plaintiff has pleaded enough factual matter to suggest the required elements of a fraud claim.  Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).[5]

Defendants also argue that plaintiff's fraud claims should be dismissed because they are not pleaded with sufficient

---

[5]Defendants argue that the fraud exception to the rule that a person has a duty to read and examine a contract that he signs is mainly limited to the insurance context, where there is an imbalance of power, and where New Jersey imposes a high burden on insurance companies.  Cases such as Bonnco (real estate contract) and Kero (contract for construction work) do not support that argument.

particularity in accordance with Federal Civil Procedure Rule 9(h). Specifically, defendants argue that plaintiff lumps all defendants together, and does not include the proper date, time, or place of the alleged misrepresentations.

The Federal Rules of Civil Procedure provide, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(h).  In order to satisfy Rule 9(h), a plaintiff must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  <u>Lum v. Bank of America</u>, 361 F.3d 217, 223-24 (3d Cir. 2004) (citation and quotations omitted).  A plaintiff may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." <u>Id.</u> at 224 (citation omitted).  A plaintiff "also must allege who made a misrepresentation to whom and the general content of the misrepresentation."  <u>Id.</u> (citations omitted).

Here, Plaintiff claims that in May 2007, the parties engaged in discussions about the assignment of HTS's lease to Tan Holdings. Plaintiff claims that he received from defendants documents

concerning Tan Holdings' financial condition, as well as Tan Holdings' purchase of HTS's assets.  On May 14, 2007, he received the Assignment of Lease and signed the acknowledgment form. Sometime thereafter, when the rent was not being paid, plaintiff discovered the alleged bait and switch.

Despite defendants' protests that plaintiff has not specifically alleged what exactly was communicated, who exactly made those communications, and when exactly those communications were made, these claims adequately place defendants on notice of the precise misconduct with which they are charged.[6]  It is clear that in May 2007, defendants HTS and Tan Holdings were involved in the negotiations of the lease assignment from HTS to Tan Holdings, and that sometime between the negotiations and plaintiff signing the form approving the Assignment of Lease, HTS, Tan Holdings, HT Systems, and/or the principals of HTS and HT Systems prepared the Assignment with HT Systems as assignee instead of Tan Holdings, and then sent the Assignment of Lease to plaintiff, without informing plaintiff of the change.  It is immaterial to the substance of

---

[6]Plaintiff's fraud claims against Hollywood Tans LLC must be dismissed without prejudice for failure to comply with Rule 9(h). In Count Three, plaintiff alleges, "Upon information and belief, Defendant Hollywood Tans LLC has received assets which were represented by Hollywood Tanning Systems, Rahn and other individual Defendants to be owned by the assignee of the Lease." (Compl. ¶ 45.)  This allegation is vague as to how Hollywood Tans defrauded plaintiff with regard to the lease, and does not provide Hollywood Tans with the requisite specificity to provide a proper response.

plaintiff's fraud claims that plaintiff does not state he was located in his Wisconsin office when he spoke with defendants, or where defendants were when they made their alleged misrepresentations, or the exact date of each communication.

Further, even though plaintiff refers to defendants collectively, the nature of the fraud allegations do not allow plaintiff to be more specific.  Because he was allegedly defrauded by entities which had independent business relationships with each other, plaintiff cannot know which of the defendants actually perpetrated the fraud--it could be one entity, or it could be all working in collusion.  The failure of plaintiff to be more specific with regard to the defendants' individual conduct is not fatal to the claims at this motion to dismiss stage, since it is only the defendants themselves who possess the knowledge of the alleged bait and switch.  Consequently, plaintiff's fraud claims shall not be dismissed for failure to comply with Rule 9(h).[7]

### 2.   **Plaintiff's contract claims**[8]

Plaintiff has also asserted a breach of contract claim against

---

[7]Correspondingly, defendants Tan Holdings and HT Systems's alternative request for a more definite statement must also be denied.

[8]Plaintiff makes clear that Count II, Breach of Contract - Individual Member Liability is only against the currently-unknown individual members of HT Systems.

HTS and HT Systems.[9]  HTS argues that this claim should be
dismissed because under the terms of the lease, HTS is primarily
liable for any HT Systems breach only if HT Systems subletted the
mall space, and not for any assignment.  Because HTS is not liable
for HT System's failure to pay rent, HTS argues that this breach of
contract claim must fail against it.

Plaintiff's breach of contract claim can be separated into
three parts: (1) plaintiff's claim that HTS breached the lease it
had with plaintiff; (2) plaintiff's claim that HT Systems breached
the lease after it was assigned to it; and (3) HTS is liable for HT
System's breach.

Prior to analyzing these claims, however, the Court must
determine which state's law applies to plaintiff's breach of
contract claim.  Both plaintiff and defendant discuss New Jersey
law.  The Lease Agreement, however, contains a choice of law
provision which indicates that Ohio law shall apply.  Further, the
Lease Agreement provides that the tenant "consents to venue and
personal jurisdiction in any state or federal court in the State of
Ohio, and a waiver of any right to trial by jury, in connection
with any claim, allegation, cause of action or legal proceeding,
with respect hereto."  (Exhibit A to Compl. at 25 ¶ R.)  Thus, it
must be determined whether Ohio law applies to plaintiff's breach

_____

[9]Defendants Hollywood Tans, LLC and Tan Holdings move to
dismiss Count I; however, plaintiff has only asserted this claim
against HTS and HT Systems.  (Compl. at 7.)

of contract claims and whether venue is proper in this Court for those claims.[10]

With regard to the choice of law provision, federal courts sitting in diversity look to the law of the forum state in making a choice of law determination, as noted above.  Robeson Industries Corp. v. Hartford Acc. & Indem. Co., 178 F.3d 160, 165 (3d Cir. 1999).  New Jersey law states that a contractual choice of law provision will be upheld unless doing so would violate its public policy.  Lucey v. FedEx Ground Package Systems, Inc., 2009 WL 51644, *3 (3d Cir. 2009); Instructional Systems, Inc. v. Computer Curriculum Corp., 614 A.2d 124, 133 (N.J. 1992) (following the Restatement (Second) of Conflicts of Laws § 187 (1969), which provides that "the law of the state chosen by the parties will apply, unless either: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which * * * would be the state of the applicable law in the absence of an

---

[10]The parties also do not discuss whether this choice of law and venue provision applies to plaintiff's fraud claims.  The Court finds that this provision does not apply to plaintiff's fraud claims because those claims do not arise out of the Lease Agreement, but rather fraud perpetrated with regard to obtaining plaintiff's assent to the assignment of the lease between HTS and HT Systems.

effective choice of law by the parties").

Here, the elements of a breach of contract claim are the same in both New Jersey and Ohio.  Compare Doner v. Snapp, 649 N.E.2d 42, 44 (Ohio App. 2 Dist. 1994) (stating that the elements of a breach of contract claim are "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff") with Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007) ("To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result.").  Ohio, however, has no connection with the present litigation.  Plaintiff is a citizen of Wisconsin, the defendants are citizens of New Jersey,[11] and the mall is located in

_____

[11]HTS and the individual defendants contend that despite this Court's Order requiring plaintiff to properly plead the citizenship of the members of the limited liability companies, plaintiff has failed to do so.  In his second amended complaint, plaintiff alleges that "upon information and belief," the members of Hollywood Tans LLC and Tan Holdings LLC are the same as HTS and, thus, are also citizens of New Jersey.  These defendants, however, do not contend that plaintiff's "information and belief" is incorrect, and they have not challenged this Court's subject matter jurisdiction over them pursuant to Fed. R. Civ. P. 12(b)(1).

Despite defendants' apparent acquiescence that their citizenship is properly pled, the Court has an independent obligation to determine subject matter jurisdiction, and it is well-established that "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." S. Freedman and Co., Inc. v. Raab, 180 Fed. Appx. 316, 320 (3d Cir. 2006) (citation omitted).  Therefore, the Court will

Pennsylvania.  It appears that Ohio law was chosen in the lease agreement because the original owner of the Pittsburgh mall was a Ohio limited liability company.  When plaintiff purchased the mall from that company and assumed all of its leases, including the one with HTS, plaintiff also assumed the Ohio choice of law provision.

Plaintiff also assumed the Ohio venue provision.  Venue provisions, although routinely upheld, do not preclude the jurisdiction of other forums.  Kubis & Perszyk Associates, Inc. v. Sun Microsystems, Inc., 680 A.2d 618, 624 (N.J. 1996) (extensively reviewing the case law nationwide regarding forum selection clauses, and indicating that the cases align with the Restatement (Second) of Conflict of Laws § 80 (1969), which provides, "The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable"); Koresko v. Nationwide Life Ins. Co., 403 F. Supp. 2d 394, 400 (E.D. Pa. 2005) ("Where

_____

instruct the parties to engage in jurisdictional discovery in order to concretely establish--or not--this Court's jurisdiction over these limited liability company defendants.  See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997) ("Our rule is generally that jurisdictional discovery should be allowed unless the plaintiff's claim is 'clearly frivolous.'").  Thereafter, the plaintiff shall file an amended complaint, consistent with Fed.R.Civ.P. 11, setting forth the proper jurisdictional allegations.  The parties are reminded that they can not consent to this court's jurisdiction if otherwise lacking, that plaintiff's jurisdictional allegations must be complete and true, and that defendants have an independent obligation to inform the court if any such allegations are believed to be untrue.

parties enter into a contract and merely consent to jurisdiction in a particular forum, they do not preclude the jurisdiction of other forums.").

Because the parties do not address the choice of law and venue provision in the Lease Agreement, and it appears that the application of Ohio law and venue in Ohio as to plaintiff's breach of contract claims is questionable, the Court will deny without prejudice HTS's motion. HTS may again move to dismiss this claim, and if it chooses to do so, it shall address this choice of law and venue issue.

### 3. Plaintiff's fraudulent conveyance claim

Plaintiff claims that when HTS sold its assets, the individual defendants distributed HTS's assets to the shareholders of HTS, and this distribution was "contrived in fraud with intent to hinder, delay or defraud creditors, including plaintiff." Plaintiff bases this claim on the allegation that HTS was primarily liable under the lease for rent, and that the distribution was fraudulent because it defrauded plaintiff as an HTS creditor.[12] Defendants argue that plaintiff has failed to plead the essential elements of

---

[12]Plaintiff basis his claim on N.J.S.A. 25:2-25, which provides, "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: a. With actual intent to hinder, delay, or defraud any creditor of the debtor."

a fraudulent conveyance claim, and such a claim is also subject to
Rule 9(h).

Because it cannot yet be determined whether plaintiff's claim
that HTS is primarily liable under the lease is viable due to the
choice of law issue discussed above, it cannot be determined
whether plaintiff's fraudulent conveyance claim is viable.
Therefore, the Court will deny HTS's motion without prejudice to
its right to refile its motion to dismiss this claim in conjunction
with its motion to dismiss plaintiff's breach of contract claim.

## CONCLUSION

For the reasons expressed above, defendants HTS, HT Systems,
Tan Holdings, and the individual defendants' motions to dismiss
plaintiff's fraud claims (Counts Three and Four) will be denied.
Plaintiff's fraud claim against defendant Hollywood Tans LLC is
dismissed without prejudice.  Defendant HTS's motion to dismiss
plaintiff's breach of contract claim (Count One) and fraudulent
conveyance claim (Count Five) is denied without prejudice to
defendant's right to refile its motion addressing the choice of law
and venue provision in the Lease Agreement.  With regard to the
Court's subject matter jurisdiction, the Court will instruct the
parties to undertake jurisdictional discovery to determine the
proper citizenship of the members of Tan Holdings, LLC and HT
Systems, LLC and to amend the pleadings as directed in this

Opinion. [13]

     An appropriate Order will be entered.

Date: <u>April 20, 2009</u>        <u>  s/ Noel L. Hillman      </u>

At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.

---

[13]Generally, an LLC is viewed as a partnership rather than a corporation for diversity purposes. <u>Kimberly-Clark PA, LLC v. Delaware County</u>, 527 F. Supp. 2d 430, 432-33 (E.D. Pa. 2007)(stating that although neither the Supreme Court nor the Third Circuit have specifically ruled on this issue, all Circuit Courts that have addressed the issue have concluded that an LLC is a partnership for diversity purposes)(citations omitted).  As a partnership, the citizenship of an LLC is determined from the citizenship of all of its members. <u>Id.</u> (stating that the rationale for treating an LLC as a partnership is based on the Supreme Court's decision in <u>Carden v. Arkoma Assoc.</u>, 494 U.S. 185, 195-96 (1990), which held that the citizenship of a limited partnership for diversity jurisdiction purposes is determined by the citizenship of all its members).  Therefore, applying the rationale that nonpersonal entities, other than corporations, are not "citizens" for jurisdictional purposes, the citizenship of an artificial entity such as an LLC for purposes of diversity jurisdiction is determined by the citizenship of all its members. <u>Id.</u>