IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROWEN PETROLEUM PROPERTIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HOLLYWOOD TANNING SYSTEMS, INC., HOLLYWOOD TANS, LLC, HT SYSTEMS, LLC, TAN HOLDINGS, LLC, RALPH VENTO, SR., RALPH VENTO, JR., DAVID N. RAHN, INDIVIDUAL DEFENDANTS 1 THROUGH 10, <br><br> Defendants. | CIVIL NO. 08-4764(NLH)(AMD) <br><br><br> **OPINION** |

**APPEARANCES:**

Ronald L. Davison, Esquire
Starr, Gern, Davison & Rubin, PC
105 Eisenhower Parkway
Roseland, NJ 07068
   *On behalf of plaintiff*

John H. Schmidt, Jr.
Lindabury, McCormick & Estabrook, PC
53 Cardinal Drive
Po Box 2369
Westfield, NJ 07091-2369
   *On behalf of defendants Hollywood Tanning Systems, Inc., Ralph Vento, Sr., Ralph Vento, Jr., David N. Rahn*

J. Bradford Mc Ilvain, Esquire
Jordan M. Rand, Esquire
Natalie D'Amora, Esquire
Dilworth Paxson, LLP
3200 the Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
   *On behalf of defendants Hollywood Tans, LLC, HT Systems, LLC, Tan Holdings, LLC*

**HILLMAN**, District Judge

This case concerns the lease of space in a mall by a Hollywood Tans franchise, and the mall owner's claims of fraud and breach of contract against various Hollywood Tans-related entities and individuals. Previously, the Court dismissed plaintiff's claims against Hollywood Tans, LLC, but denied the other defendants' motions to dismiss. The Court also directed the parties to undertake jurisdictional discovery to establish the Court's subject matter jurisdiction over plaintiff's claims against defendants Tan Holdings, LLC and HT Systems, LLC, and ordered plaintiff to amend the complaint accordingly.[1]

Currently before the Court is plaintiff's motion to file a fourth amended complaint, Tan Holdings, LLC's opposition to plaintiff's motion and corresponding cross-motion to dismiss plaintiff's claims, as well as its motion for sanctions against plaintiff and his counsel. Plaintiff has opposed Tan Holdings' motions, and has cross-moved for sanctions. Defendants Hollywood Tanning Systems, Inc. and the individual defendants have joined in on Tan Holdings' motions.

For the reasons expressed below, plaintiff's motion for leave

---

[1] The parties complied, and plaintiff has amended his complaint to plead more completely the defendants' citizenship and thereby establish this Court's jurisdiction pursuant to 28 U.S.C. § 1332.

to amend will be granted, and all other motions will be denied.

## BACKGROUND & DISCUSSION

As recounted in the Court's April 20, 2009 Opinion, plaintiff's Third Amended Complaint describes the following background facts: On June 26, 2005, defendant Hollywood Tanning Systems, Inc. ("HTS") leased space in a mall in Pittsburgh to operate a Hollywood Tans tanning salon. The lease was for ten years and was entered between Falls Creek Development and HTS. In February 2006, plaintiff Rowen Properties ("Rowen")[2] purchased the shopping mall from Falls Creek Development. As a result, Rowen became the landlord of HTS. On or about May 31, 2007, HTS sold all or a portion of its assets to defendant Tan Holdings pursuant to an asset purchase agreement ("APA"). In that same month, HTS contacted Rowen for approval of an assignment of their lease to Tan Holdings. According to the terms of the lease, HTS was permitted to assign the lease to another tenant "whose net worth is equal to or exceeds" that of HTS. To that end, Rowen received a document titled "Tan Holdings, LLC (formerly Hollywood Tanning Systems, Inc.) Projected Opening Balance Sheet," dated May 31, 2007, which represented that Tan Holdings had substantial net assets. Rowen reviewed this document, as well as a "Form of Assignment and

---

[2] It appears that Brendan J. Rowen is the sole member of plaintiff Rowen Petroleum Properties, LLC. Therefore, the Court will refer to plaintiff as "he."

Assumption Agreement," which was between HTS and Tan Holdings and had the effect of HTS assigning to Tan Holdings all of HTS's rights under the lease, and Tan Holdings agreeing to assume and be bound to perform the obligations of the tenant under the lease.  Based on these documents, Rowen approved the assignment of the lease as between HTS and Tan Holdings.  On May 14, 2007, Rowen received the Assignment of Lease and a form "Acknowledgement, Agreement and Consent" for his signature.  According to Rowen, he signed these documents based on the parties' prior conversations and prior documents he reviewed.

   Rowen came to discover, however, that the Assignment of Lease did not indicate an assignment between HTS and Tan Holdings, but rather between HTS and defendant HT Systems.  Rowen admits that he did not read the Assignment before signing the Acknowledgment because all previous discussions and documents concerned Tan Holdings, and not HT Systems.  Rowen was never provided financial information regarding HT Systems, and the defendants never informed him of the change.  Rowen also claims that he would have never approved HT Systems as an assignee of the lease because HT Systems was essentially a shell company, was undercapitalized, and lacked the financial resources to assume and discharge its obligations under the lease.  Based on this conduct, Rowen claims that he was fraudulently induced into approving the assignment, and that it

4

also constituted a fraudulent conveyance.[3]

Based on the above-pleaded facts, the defendants had previously moved to dismiss plaintiff's fraud claims, arguing, *inter alia*, that even taking as true plaintiff's claims that a bait and switch occurred with regard to the substitution of HT Systems for Tan Holdings in the lease assignment, plaintiff is a savvy businessman who should have read the two page document prior to signing the Acknowledgment.  If he had read the assignment, he would have seen that HT Systems was named, rather than Tan Holdings.  Thus, defendants argued that plaintiff could not claim he reasonably relied[4] on the representations of defendants with regard to the identity of the assignee of the lease such that it

---

[3] Though not the subject of any parties' current motion, Rowen has also asserted a breach of contract claim against HTS and HT Systems.  At some point following the assignment of the lease, HTS and HT Systems failed to pay rent and other charges of more than $950,000.  Notwithstanding any fraud issues, Rowen claims that pursuant to the lease, HTS remained primarily liable under the lease for the remainder of its term.  Further, Rowen represents that on June 22, 2007, pursuant to the APA between HTS and Tan Holdings, HTS and HT Systems entered into an assignment of lease, whereby HTS assigned its rights under the lease to HT Systems.  Thus, Rowen claims that both HTS and HT Systems, as well as the individual members of HT Systems, are liable for breach of contract.

[4] To state a valid fraud claim, a plaintiff must prove (1) a material misrepresentation of a presently existing or past fact, (2) with knowledge of its falsity and with the intention that the other person rely on it, and that there was in fact both (3) reasonable reliance and (4) resulting damages.  Banco Popular N. Am. v. Gandi, 876 A.2d 253, 260 (N.J. 2005); Jewish Center of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981).

5

absolved plaintiff's duty to have read the contract before he signed it.

In the Court's April 20, 2009 Opinion, defendants' argument was rejected, because the Court could not conclude as a matter of law that plaintiff failed to state a claim for reasonable reliance. In making that decision, the Court recognized,

> [J]ust before signing the Assignment of Lease, which was prepared by defendants, plaintiff read various documents which stated that Tan Holdings was to be the assignee of HTS's lease. Prior to signing the Assignment of Lease, plaintiff received a document titled "Tan Holdings, LLC (formerly Hollywood Tanning Systems, Inc.) Projected Opening Balance Sheet," which represented that Tan Holdings had substantial net assets. Plaintiff also received and reviewed "Form of Assignment and Assumption Agreement," which was between HTS and Tan Holdings and had the effect of HTS assigning to Tan Holdings all of HTS's rights under the lease, and Tan Holdings agreeing to assume and be bound to perform the obligations of the tenant under the lease. Plaintiff claims that when he received the Assignment of Lease from defendants, he was never informed that Tan Holdings was no longer the assignee. Further, plaintiff claims that he never received any financial or other information regarding HT Systems that would have alerted him that any entity other than Tan Holdings was going to assume the lease. Even though plaintiff could have discovered that HT Systems was listed as the assignee rather than Tan Holdings by simply reading the Assignment of Lease defendants sent him, taking as true plaintiff's assertions in his complaint, nothing in the parties' prior communications would have alerted plaintiff that Tan Holdings was not the entity listed on the Assignment as prepared by defendants. . . . Whether it was reasonable for plaintiff to rely on the prior writings and representations and not read the Assignment of Lease before signing the Acknowledgment is a determination that cannot be made at the motion to dismiss stage. At this stage, plaintiff has pleaded enough factual matter to suggest the required elements of a fraud claim. . . .

(April 20, 2009 Op. at 11-14.)

Since the issuance of that Opinion, email communications between plaintiff and HTS's CEO, David Rahn, surfaced. Those emails concern HTS's sale to Tan Holdings, and the assignment of HTS's lease with plaintiff. One email chain reveals that on May 4, 2007, Rahn emailed plaintiff, "We are requesting your consent to the execution of an assignment in substantially the form attached (the 'Assignment') from Hollywood Tanning Systems, Inc. ('Assignor') to HT Systems, LLC ('Acquiror') or an affiliate of Acquiror ('Assignee')." (Pl. Mot. to Amend, Ex. F.) Based on this email, as well as others provided as exhibits to Tan Holdings' briefs in support of its current motions, counsel for Tan Holdings wrote a "Rule 11" letter to plaintiff's counsel requesting plaintiff to dismiss his fraud claims. Tan Holdings's counsel contended that because it had become clear that plaintiff's claim that he was never informed that HT Systems was the actual assignee of the lease is false, plaintiff cannot maintain that defendants made any material representations, and, accordingly, plaintiff cannot maintain that he reasonably relied upon any misrepresentation. Because he cannot prove at least two elements of his fraud claims, Tan Holdings contends that continuing to advance such claims is violative of Rule 11.[5]

---

[5] As discussed below, Federal Civil Procedure Rule 11 governs attorney ethics and candor to the Court.

Plaintiff declined to withdraw his fraud claims, and filed his instant motion for leave to file another amended complaint. Plaintiff's proposed fourth[6] amended complaint recognizes, and attaches a copy of, the May 4, 2007 email. Plaintiff now claims that despite this particular email, throughout the subsequent email and telephone conversations, "[a]t no time . . . did defendant Rahn or any of the other defendants . . . specifically call to Mr. Rowen's attention the fact that HT Systems had been substituted for Tan Holdings as the proposed assignee of the Lease and that HT Systems was not the same entity as Tan Holdings." (Pl. Proposed Fourth Amend. Compl. ¶ 49.) Further, as he has claimed in his prior complaints, plaintiff contends, "Nor did defendant Rahn or any of the other defendants provide plaintiff with any financial information pertaining to HT Systems, as they had done with respect to Tan Holdings in accordance with the requirements of the Lease." (Id.) Overall, plaintiff contends that he did not notice the name change of the assignee, "in part because the names of the business entities and their affiliates had names which were similar and easily confused, . . . but primarily because of the tactics of the defendants which were intended to mislead plaintiff." (Id. ¶ 50.) As he claimed in his prior complaints, plaintiff restates in his proposed amended complaint that he would have never approved HT

---

[6] Plaintiff's prior complaints were amended mainly with regard to pleading the defendants' citizenship for jurisdictional purposes, and they otherwise remained substantively unchanged.

8

Systems as an assignee of the lease because HT Systems was essentially a shell company, was undercapitalized, and lacked the financial resources to assume and discharge its obligations under the lease.[7]  Plaintiff claims that defendants knew this, and that is why they pulled a "bait and switch."

In opposing plaintiff's motion to amend, Tan Holdings, joined by the other defendants, argues that plaintiff's proposed amendments are futile.  Defendants argue, as they did in their Rule 11 letter to plaintiff, that the Court denied their previous motions to dismiss because plaintiff made claims, which had to be taken as true, that he was never informed that HT Systems was to be substituted for Tan Holdings on the lease assignment.  Now that it is clear that this claim is untrue, defendants argue that plaintiff should not be permitted to amend his complaint, and his fraud claims should be otherwise dismissed.  Defendants also contend that plaintiff and his counsel should be sanctioned.

Plaintiff, on the other hand, stands by the veracity and merit of his claims.  Plaintiff argues that his proposed amendment makes clear that it is not simply the name of the assignee that constituted defendants' material misrepresentation, but rather it was defendants' intentionally surreptitious activity of hiding HT Systems' financial information so that defendants would not have to pay, and plaintiff could not recoup, the unpaid rent and other

---

[7]Indeed, HT Systems is now in bankruptcy.

9

damages. Further, plaintiff argues that defendants' sanction motion is frivolous, and he has cross-moved for sanctions.

Defendants' position is understandable. The Court recognizes that plaintiff's prior complaints not only claim that defendants committed fraud as to the financial status of its assignee, but also that seemingly out of the blue defendants inserted HT Systems in lieu of Tan Holdings on the lease assignment and did not tell plaintiff of this switch in the last-exchanged paperwork. Based on both of these allegations, but more specifically on the name-switch, the Court found that plaintiff had sufficiently pleaded all the elements of his fraud claims--particularly addressing material misrepresentation and reasonable reliance--and denied defendants' motions to dismiss. Now, however, it has become clear that the substitution of HT Systems for Tan Holdings was not so covert. Thus, the issue to be determined is whether this revelation should (1) preclude plaintiff from amending his complaint "out of an over-abundance of caution to ensure that the allegations of the complaint could not even arguably be cast as inaccurate," (Pl. Reply at 16-17.), (2) cause the dismissal of plaintiff's current complaint, and (3) warrant sanctions against plaintiff.

Addressing plaintiff's motion to amend first, Federal Civil Procedure Rule 15 provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has shown a strong liberality in allowing amendments under

10

Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities.  <u>Dole v. Arco Chemical Co.</u>, 921 F.2d 484, 487 (3d Cir. 1990); <u>Bechtel v. Robinson</u>, 886 F.2d 644, 652 (3d Cir. 1989).  An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.  <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

    Defendants contend that plaintiff's proposed amendment is futile.  That is, defendants argue that because plaintiff was specifically informed about the name switch, he can no longer claim fraud, and therefore, it would be of no use to amend his complaint due to this dispositive fact.  The Court would be inclined to agree with defendants should plaintiff have based his claims solely on the name substitution.  Indeed, the Court would be hard-pressed to find, when compared to the case law discussed in the Court's prior opinion, that defendants made a material misrepresentation of the name of the assignee when they specifically listed HT Systems as the assignee in several written documents sent to, and admittedly read by, plaintiff.

    Plaintiff's allegations are more complex, however, and have been since his first complaint.  As pointed out by plaintiff, in their briefs defendants only focus on the assignee name issue, and do not address the allegations concerning defendants' failure to

11

provide plaintiff with the financial information of HT Systems. Although the Court focused on the name-change issue in addressing defendants' prior motion, which mainly argued that plaintiff could not prove reasonable reliance when a simple reading of the lease assignment would have alerted him to the name change, the Court also noted that plaintiff's fraud claims concerned the intentional misrepresentation, through omission, of HT Systems' financial condition. Plaintiff's proposed fourth amended complaint clarifies that his claims do not hinge on the name substitution, but rather on defendants' alleged misrepresentation that, whatever the name of the assignee, the assignee had the proper financial status to become assignee as required by the lease.

The standard governing a motion for leave to amend is essentially the same as the one applicable to a motion to dismiss, In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997), and, thus, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to plaintiff, Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). Further, the issue is "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The facts alleged by plaintiff in his fourth amended

12

complaint, if taken as true, support the elements of a fraud claim. See *supra* note 4. Even though plaintiff may not ultimately prevail on his claims, he has sufficiently pleaded them, and is entitled to present evidence in support of them.

Again, the Court recognizes that a look beyond the pleadings--to the documents defendants attach to their motions, and to the appearance of disingenuousness inherent in a situation where it seems that plaintiff has changed his tune based on what defendants characterize as smoking-gun evidence--may reveal that plaintiff's fraud claims are specious. The Court, however, cannot look beyond plaintiff's complaint in deciding the motion for leave to amend. See Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999). Additionally, one purpose of the liberal amendment rules is to allow plaintiff to cure any inconsistencies, deficiencies, or inaccuracies in his prior pleadings. Plaintiff has recognized the May 4, 2007 email, and adjusted his complaint accordingly. With the newly-filed complaint, defendants may now substantively challenge plaintiff's freshly-styled claims.[8]   See Snyder v. Pascack Valley Hospital, 303

---

[8]Defendants have moved for judgment on the pleadings with regard to plaintiff's fraud claims. Procedurally, that motion has to be directed at plaintiff's third amended complaint, since the fourth amended complaint has not yet been deemed as filed. Once plaintiff's most recent complaint is filed, defendants' motion is moot. Defendants, of course, are permitted to file another motion to dismiss or a motion for summary judgment, when or if appropriate, to address the claims in plaintiff's newest

13

F.3d 271, 276 (3d Cir. 2002) (explaining that the amended complaint supercedes the original version in providing the blueprint for the future course of a lawsuit).[9]

With regard to defendants' motions for sanctions, Rule 11 is intended to discourage the filing of frivolous, unsupported, or unreasonable claims by "impos[ing] on counsel a duty to look before

---

complaint, including the issues concerning material misrepresentations of financial information. Indeed, the Court notes that in various letters and documents submitted to the Court, defendants have presented several substantive arguments concerning the ultimate viability of plaintiff's fraud claims. For example, Tan Holdings argues that plaintiff's claims that he was confused by the defendants' different names and that he did not take any notice of the name change because he only focused on the financial information of Tan Holdings is not credible, because as an attorney he must read what he is given and cannot put blinders on and ignore the facts presented to him. (See Docket No. 94, Tan Holdings' Sept. 28, 2009 letter brief to Magistrate Judge Donio.) Tan Holdings also argues that plaintiff's reliance on Tan Holdings' balance sheet to satisfy its assets as a proper assignee is unreasonable, as the balance sheet shows Tan Holdings' liabilities exceed its tangible assets by $9 million. (Id.) Additionally, HTS CEO David Rahn, in a certification attached to an August 19, 2009 letter to the Clerk indicating that HTS and the individual defendants join in on Tan Holdings' motions, details his recollection regarding his communications with plaintiff to contradict plaintiff's claims. (See Docket NO. 83, August 19, 2009 Letter.) These arguments and evidence supporting these arguments, however, must be advanced in accordance with Rule 56 and cannot be considered in the context of the current motions.

[9]Plaintiff's fourth amended complaint also adds fraud claims against the controlling member of HT Systems--Hollywood Tans, LLC--and a specific count for rescission of contract. Plaintiff's motion also requests that the amendment relate back to the original filing of the complaint, and that due to HT Systems' pending bankruptcy, plaintiff's claims against that defendant be stayed. Defendants do not challenge these additions, and these issues are addressed below.

leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" Lieb v. Topstone Indus. Inc., 788 F.2d 151, 157 (3d Cir. 1986). Specifically, Rule 11 requires that an attorney certify that any pleading, written motion or other paper presented to the court (1) is not presented for any improper purpose such as to harass or increase the costs of litigation, and (2) the legal contentions contained "are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(1), (2).  Rule 11 sanctions are "aimed at curbing abuses of the judicial system," Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 397 (1990), and "intended to discourage the filing of frivolous, unsupported, or unreasonable claims," Leuallen v. Borough of Paulsboro, 180 F. Supp. 2d 615, 618 (D.N.J. 2002).

     The Court finds that no sanctions are warranted here.  With regard to defendants' motion for sanctions against plaintiff, because the Court has granted plaintiff's motion for leave to file his fourth amended complaint, it cannot be found that plaintiff's refusal to withdraw his fraud claims was violative of Rule 11. With regard to plaintiff's cross-motion against defendants, even though defendant's motion was unavailing, the circumstances giving rise to defendants' sanction motion cannot be found to be frivolous or brought in bad faith.  Accordingly, both motions for sanctions

15

must be denied.

Next, as noted above, defendants' motion for judgment on the pleadings as to plaintiff's fraud claims must be denied, as that motion could only be advanced as to the current complaint. Now that the third amended complaint has been superceded by the fourth amended complaint, any motion directed at the prior complaint is moot.

Finally, as also noted above, plaintiff reminds the Court of HT Systems' Chapter 7 bankruptcy filing and the "suggestion of bankruptcy" filed on the docket. On September 10, 2009, Magistrate Judge Donio entered an order administratively terminating HT Systems as a party. Because of HT Systems' bankruptcy and the attendant issues, plaintiff requests, and defendants do not object, that his amended complaint be deemed to relate back to the original filing of his first complaint in September 23, 2008.

Rule 15(c)(1) provides that an amendment to a pleading relates back to the date of the original pleading in three instances:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and

>   complaint, the party to be brought in by amendment:
>
>   (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
>   (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). With regard to the substantive claims, and those specifically against HT Systems, it is clear that plaintiff's amended complaint arises out of the same conduct as the first complaint. Accordingly, for claims advanced against the current defendants, plaintiff's fourth amended complaint relates back to the date of his original filing.[10]

## CONCLUSION

Plaintiff's proposed fourth amended complaint has been sufficiently revised to address the perceived inconsistencies of his prior complaints so that he continues to set forth valid claims of fraud. As discussed above, whether plaintiff's fraud claims, in their current form, can withstand any subsequent challenge by

---

[10] As also noted above, plaintiff's fourth amended complaint adds fraud claims against Hollywood Tans, LLC, which is the sole member of HT Systems. Plaintiff's claims against this defendant were dismissed in the Court's April 20, 2009 Opinion for plaintiff's failure to plead with the proper specificity required by Rule 9(h). There has been no opposition to the amendment, and Rule 15(c)(1)(C) appears to be satisfied. Accordingly, this claim against Hollywood Tans, LLC may be advanced, and deemed to relate back to the original complaint, without prejudice to Hollywood Tans, LLC's right to challenge this finding once it has been properly brought back into the case.

17

defendants remains to be seen.  For now, plaintiff's fourth amended complaint shall be deemed as filed (relating back to September 23, 2008), and shall serve as the blueprint for the case going forward.

An appropriate Order will be entered.


Date: March 12, 2010                     s/ Noel L. Hillman

At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.