IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROWEN PETROLEUM PROPERTIES, LLC,<br>          Plaintiff,<br>     v.<br><br>HOLLYWOOD TANNING SYSTEMS, INC., HOLLYWOOD TANS, LLC, HT SYSTEMS, LLC, TAN HOLDINGS, LLC, RALPH VENTO, SR., RALPH VENTO, JR., DAVID N. RAHN, INDIVIDUAL DEFENDANTS 1 THROUGH 10,<br>          Defendants. | CIVIL NO. 08-4764(NLH)(AMD)<br><br>**OPINION** |

**APPEARANCES:**
RONALD L. DAVISON
RICHARD THOMAS WELCH
STARR, GERN, DAVISON & RUBIN, PC
105 EISENHOWER PARKWAY
ROSELAND, NJ 07068
    *On behalf of plaintiff*

JOHN H. SCHMIDT , JR.
LINDABURY, MCCORMICK & ESTABROOK, PC
53 CARDINAL DRIVE
PO BOX 2369
WESTFIELD, NJ 07091-2369
    *On behalf of defendants Hollywood Tanning Systems, Inc.,
    Ralph Venuto, Sr., Ralph Venuto, Jr., David N. Rahn*[1]


**HILLMAN**, District Judge

        This matter concerns the lease of space in a mall by a

Hollywood Tans franchise.  Before the Court are a motion for

_____

        [1]      Defendants Ralph Venuto, Sr. and Ralph Venuto, Jr. were
incorrectly named as Ralph Vento, Sr. and Ralph Vento, Jr.

partial summary judgment filed by defendants Hollywood Tanning
System, Inc., David R. Rahn, Ralph Venuto, Jr., and Ralph Venuto,
Sr.[2], and a cross motion for partial summary judgment filed by
plaintiff.  For the reasons expressed below, defendant's motion
will be denied as to plaintiff's fraud claims (Counts Six, and
Seven), and as to plaintiff's fraudulent conveyance claim (Count
Eight).  Defendants' motion will be denied without prejudice as to
plaintiff's claim for rescission (Count Two), and plaintiff's
claim of individual member liability (Count Five).  Plaintiff's
cross motion for partial summary judgment as to its breach of
contract claims (Count One and Three) will be denied without
prejudice.

I.   **JURISDICTION**

Plaintiff alleges that this Court has jurisdiction over
this matter pursuant to 28 U.S.C. § 1332 because there is complete
diversity of citizenship between the parties and the amount in
controversy exceeds $75,000.  Plaintiff, Rowen Petroleum
Properties, LLC is a Wisconsin limited liability company
maintaining a principal place of business in Wisconsin.  Brendan
Rowen is a citizen of Wisconsin and the sole member of Rowen
Petroleum Properties, LLC ("Rowen").[3]  Defendant Hollywood Tanning

---

[2] During the pendency of this litigation, Ralph Vento Sr.
passed away and his Estate has been litigating this matter.

[3] As noted, Brendan J. Rowen is the sole member of plaintiff
Rowen Petroleum Properties, LLC.  At times in this Opinion

Systems, Inc. ("HTS") is a New Jersey corporation with its principal place of business in New Jersey.  Ralph Venuto, Sr., deceased, was a citizen of New Jersey, and his widow, Carol F. Venuto, who was appointed executrix of his estate from the Surrogate of Camden County, New Jersey, is a citizen of New Jersey.  Defendant Ralph Venuto, Jr. is a citizen of New Jersey.  Defendant David N. Rahn is a citizen of New Jersey.

## II.   BACKGROUND

The factual background of this case has been stated in previous Opinions and is repeated, in part, in this Opinion.[4]  On June 26, 2005, HTS leased space in a mall in Pittsburgh to operate a Hollywood Tans tanning salon ("Lease").  The Lease was for ten years and was entered into between Falls Creek Development and HTS.  In February 2006, Rowen purchased the shopping mall from Falls Creek Development.  As a result, Rowen became the landlord of HTS.

On or about April 18, 2007, HTS entered into an asset purchase agreement ("APA") with Tan Holdings, LLC ("Tan Holdings") whereby HTS agreed to sell all of its assets, including the Lease,

_____

references to Rowen or the Plaintiff are references to the individual Brendan Rowen.

[4] See Rowen Petroleum Properties, LLC v. Hollywood Tanning Systems, Inc., No. 08-4764, 2010 WL 936217 (D.N.J. March 12, 2010) (Hillman, J.) (granting motion to amend complaint) ("Rowen II"), and Rowen Petroleum Properties, LLC v. Hollywood Tanning Systems, Inc., No. 08-4764, 2009 WL 1085737 (D.N.J. April 20, 2009) (Hillman, J.) (denying motion to dismiss) ("Rowen I").

and whereby Tan Holdings agreed to assume certain HTS liabilities, including but not limited to those under the Lease.  According to the terms of the Lease, HTS was permitted to assign the Lease, upon the landlord's prior written consent, to another tenant "whose demonstrable net worth is equal to or exceeds" that of HTS.

On or about April 26, 2007, HTS sent plaintiff, as well as other landlords, a letter requesting consent to the assignment of the Lease to the purchaser pursuant to the APA.  Included with the letter was a document titled "Tan Holdings, LLC (formerly Hollywood Tanning Systems, Inc.) Projected Opening Balance Sheet," dated May 31, 2007, showing total assets in the amount of $62,497,314, total liabilities in the amount of $23,997,064, and owner's equity in the amount of $38,500,250, as well as a "Form of Assignment and Assumption Agreement."  The agreement, between HTS and Tan Holdings, assigned to Tan Holdings all of HTS's rights under the Lease with Tan Holdings agreeing to assume and be bound to perform the obligations of the tenant under the lease.

Prior to the closing of the deal, HTS contacted Rowen for approval of the assignment of their Lease.  There was at least one telephone call and several emails between David Rahn, HTS's CFO, and Brendan Rowen.  Unlike the original packet of materials sent to Rowen, the emails messages clearly state that the assignment was to be between HTS and HT Systems, LLC, not between HTS and Tan Holdings.  Plaintiff, however, maintains that

4

throughout the email and telephone conversations neither Rahn nor any of the other defendants specifically called his attention to the fact that HT Systems had been substituted for Tan Holdings as the proposed assignee of the Lease, and that HT Systems was not the same entity as Tan Holdings.  Further, plaintiff claims that neither Rahn nor any of the other defendants provided plaintiff with any financial information pertaining to HT Systems, as they had done with respect to Tan Holdings in accordance with the requirements of the Lease.  Plaintiff also did not request any financial information pertaining to HT Systems.  Plaintiff argues that he was given the impression by HTS that whatever entity was on the assignment was the entity that would be inheriting HTS's assets, whether that was Tan Holdings or some other entity. Plaintiff states that had he known HT Systems would not be receiving HTS's assets, he would have never approved HT Systems as an assignee of the Lease because HT Systems was essentially a shell company, was undercapitalized, and lacked the financial resources to assume and discharge its obligations under the Lease. Plaintiff claims that defendants knew this, and that they pulled a "bait and switch."

On May 14, 2007, Rowen received the Assignment of Lease and a form "Acknowledgement, Agreement and Consent" for his signature.  According to Rowen, he signed these documents based on the parties' prior conversations and prior documents he reviewed

and his belief that the assignee was to inherit HTS's assets.  On or about May 31, 2007, the deal closed and HTS sold its assets to defendant Tan Holdings pursuant to the APA, and the Lease was assigned to HT Systems.

Rowen came to discover that the assignment of lease did not indicate an assignment between HTS and Tan Holdings, but rather between HTS and HT Systems.  Rowen claims that he was fraudulently induced into approving the assignment, and that it also constituted a fraudulent conveyance.  He brings fraud claims against HTS and the individual members of HTS.  Rowen also asserts a breach of contract claim against HTS for HTS's breach of the Lease by assigning the Lease to a company that did not have a demonstrable net worth equal to or exceeding that of HTS.  He also asserts a breach of contract claim against HTS for liability for rent.  At some point following the assignment of the Lease, HTS and HT Systems failed to pay rent and other charges of more than $950,000, and Rowen claims that pursuant to the Lease, HTS remained primarily liable for the remainder of its term.  Plaintiff also seeks to hold the individual defendants liable for breach of the Lease.

On September 9, 2009, defendant HT Systems was administratively terminated due to a filing of suggestion of bankruptcy and then subsequently dismissed by plaintiff on June 22, 2011.  Additionally, on June 22, 2011, judgment by consent was

entered against defendant Tan Holdings, LLC in favor of plaintiff, and defendant Hollywood Tans LLC was dismissed upon plaintiff's voluntary dismissal of all claims.  Named defendants remaining in the case are: Hollywood Tanning Systems, Inc., ("HTS") (The Estate of) Ralph Venuto, Sr., Ralph Venuto, Jr., and David N. Rahn.  The remaining defendants filed a motion for partial summary judgment seeking to dismiss plaintiff's claims of fraud and fraudulent conveyance, as well as plaintiff's claim that the individual members of HTS should be held liable as set forth in plaintiff's fourth amended complaint.[5]  Plaintiff filed a cross motion for partial summary judgment arguing that judgment should be entered in its favor on its breach of contract claims.

### III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330

---

[5]    Defendants had filed a motion to dismiss plaintiff's second amended complaint which was denied.  Subsequently, plaintiff was permitted to file a third and then fourth amended complaint.  The remaining defendants now seek to have summary judgment granted in their favor regarding certain claims as set forth in plaintiff's fourth amended complaint.

(1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.

2001).

If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.  See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

**B.   Plaintiff's Cross Motion for Partial Summary Judgment**

Plaintiff's cross motion for partial summary judgment will be addressed first because it raises a threshold issue regarding which state's law should be applied to the Lease.  As explained below, this issue was raised by the Court in its previous Opinion, yet it remains unaddressed by both parties in their motions.  Thus, certain common law claims that turn on whether Ohio law, New Jersey law, or some other state's laws,[6] should be applied will be dismissed without prejudice, and the parties shall be granted leave to refile their motions which shall include a proper choice of law and venue analysis.

Plaintiff filed a cross motion for partial summary judgment on its breach of contract claims against defendant HTS (Counts One and Three).  The contract at issue is the Lease agreement dated June 26, 2005 entered into between plaintiff's predecessor and HTS.  Rowen acquired the Lease after purchasing

---

[6]    Other possibilities include Wisconsin and Pennsylvania.

the shopping mall where the HTS store was located, and Rowen and HTS became landlord and tenant, respectively.

In this Court's Opinion regarding the defendants' previous motion to dismiss plaintiff's breach of contract claims, the Court found that:

> The Lease Agreement, however, contains a choice of law provision which indicates that Ohio law shall apply. Further, the Lease Agreement provides that the tenant "consents to venue and personal jurisdiction in any state or federal court in the State of Ohio, and a waiver of any right to trial by jury, in connection with any claim, allegation, cause of action or legal proceeding, with respect hereto." ...[7] Thus, it must be determined whether Ohio law applies to plaintiff's breach of contract claims and whether venue is proper in this Court for those claims.

Rowen Petroleum, 2009 WL 1085737, at *7 (Rowen I).

This Court then engaged in a brief discussion of choice of law issues and some of the underlying facts surrounding the contract at issue in this matter. Ultimately, this Court found that since the parties did not address the choice of law and venue provision in the Lease, and since it appeared that the application of Ohio law and venue in Ohio as to plaintiff's breach of contract claims was questionable, it denied without prejudice HTS's motion to dismiss the contract claim but advised that if HTS moved again to dismiss the claim, it should address the choice of law and venue issue. Id. at *8.

Although the defendant did not move again to dismiss

---

[7]     See Lease at 25, ¶ R.

plaintiff's contract claim, the plaintiff filed a motion for
partial summary judgment asking the Court to rule in its favor.
Regardless of who the movant is, the Court's previous Opinion
makes clear that the choice of law and venue issues regarding the
Lease should be expressly addressed by the parties.  Id.  The
Court should not be left to guess whether the parties believe the
provisions can be or are waived or whether the choice of law issue
is moot because the law of the potential states involved is the
same on the contract and contract-related issues.  As we stated
before, those issues should be researched and expressly addressed
by the parties as a threshold matter.

Other than noting the general proposition that a federal
court sitting in diversity applies the forum's substantive law,
Plaintiff did not provide any choice of law or venue analysis and
did not refer to the Court's previous Opinion.  Instead, the
plaintiff merely cited to New Jersey law.  As such, the Court
instructs again that before the breach of contract claim can be
decided, the moving party must address the choice of law and venue
issue and provide analysis as to which state's law applies to the
breach of the Lease, and whether Ohio or New Jersey is the proper
venue, as per the Court's instructions in its previous Opinion.
See id.

Accordingly, plaintiff's cross motion for partial
summary judgment on the breach of contract claim will be denied

11

without prejudice with leave to re-file its motion addressing these issues.[8]

### C. Defendants' Motion for Partial Summary Judgment

Defendants seek to dismiss plaintiff's claims of fraud (Counts Six and Seven), plaintiff's claim that the Lease should be rescinded due to fraud (Count Two), plaintiff's claim that the

---

[8] While these issues must be expressly addressed by the parties when and if the motions are renewed they need not be complicated. As noted in our previous opinion, the venue provision does not appear to require venue in Ohio exclusively. Moreover, it appears to benefit Plaintiff who has chosen not to invoke it. The parties may simply and expressly agree that the contract and contract-related claims may be venued in this District or waived any previous agreement. The choice of law issue is more complicated. As the parties no doubt recognize, this Court sitting in diversity applies the substantive law of the forum. That default selection includes the forum's own choice of law rules. However, other than the presence of the defendants, this case has little to do with New Jersey. The plaintiff is a citizen of Wisconsin and the leasehold at issue concerned a property in the Commonwealth of Pennsylvania. Under such circumstances, it is possible, at least as it relates to the contract and contract-related claims, that New Jersey choice of law rules might direct the Court to apply the substantive law of another state. The best evidence of this is the parties' own apparent contractual agreement to apply Ohio law to the Lease. The Court assumes that the parties may jointly agree to ignore or waive the choice of law provision in the Lease selecting Ohio law and ask the court to apply New Jersey substantive law (or any other body of law) either by consent or by an agreement that the law governing all the contract and contract-related claims is the same in each state implicated. In the event of the former, we assume that the parties may also agree that the Court should apply New Jersey substantive law but ignore New Jersey's choice of law rules which might point the Court to Ohio or elsewhere. What the parties may not do is ignore these issues. In renewing their motion, the parties may simply file a joint letter brief on the issue of choice of law (or separate briefs) and ask that the Clerk of Court re-list the previously filed motions.

individual members of HTS should be held liable for the lease (Count Five) and plaintiff's claim that the conveyance of assets to HTS shareholders was a fraudulent conveyance (Count Eight). One aspect of this motion, like Plaintiff's breach of contract claim, is clouded by the unresolved issue of whether New Jersey law, Ohio law, or some other state's law applies to these claims. More specifically, whether the individual defendants should be held liable for breach of contract could be said to turn on the Court's application of contract law and other common law to these facts. Therefore, the individual member liability claim will be denied without prejudice, to allow the parties to expressly address the choice of law issues. The fraud claims are addressed below.[9]

### 1.   Fraud

#### a. Rule 9(b)

Defendants argue that plaintiff failed to plead his allegations of fraud with sufficient particularity as required by Fed.R.Civ.P. 9(b), and failed to allege specific facts that would demonstrate any material misrepresentation by defendants or a

---

[9]   The Court has already found that New Jersey law applies to plaintiff's fraud claims because the alleged fraudulent activity occurred in New Jersey by New Jersey defendants. See Rowen Petroleum Properties, LLC v. Hollywood Tanning Systems, Inc., No. 08-4764 (NLH), 2009 WL 1085737, at *3 (D.N.J. Apr. 20, 2009) (citations omitted).

reasonable reliance by plaintiff.

Of course, claims alleging fraud or mistake must meet the heightened pleading requirements of Fed.R.Civ.P. 9(b), which requires such claims to be pled with "particularity."  See Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F.Supp.2d 494, 510 (D.N.J. 2000).  A plaintiff must allege the "who, what, when, where, and how" of the claim.  Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004).  A plaintiff "may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.' " Id. (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).  The Rule's heightened pleading requirements "give[ ] defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." Naporano Iron & Metal Co. v. American Crane Corp., 79 F.Supp.2d 494, 511 (D.N.J. 2000).

We find this aspect of defendants' motion perplexing.  Defendants had previously raised this argument in their motion to dismiss plaintiff's second amended complaint.  The Court denied the motion to dismiss holding that plaintiff had adequately placed defendants on notice of the precise misconduct with which they were charged, and plead enough factual matter to suggest the

14

required elements of a fraud claim.  As explained in the Court's

opinion deciding the motion to dismiss:

> Despite defendants' protests that plaintiff has not
> specifically alleged what exactly was communicated, who
> exactly made those communicarions, and when exactly
> those communications were made, these claims adequately
> place defendants on notice of the precise misconduct
> with which they are charged.  It is clear that in May
> 2007, defendants HTS and Tan Holdings were involved in
> the negotiations of the lease assignment from HTS to
> Tan Holdings, and that sometime between the
> negotiations and plaintiff signing the form approving
> the Assignment of Lease, HTS, Tan Holdings, HT Systems,
> and/or the principals of HTS and HT Systems prepared
> the Assignment with HT Systems as assignee instead of
> Tan Holdings, and then sent the Assignment of Lease to
> plaintiff, without informing plaintiff of the change.
> It is immaterial to the substance of plaintiff's fraud
> claims that plaintiff does not state he was located in
> his Wisconsin office when he spoke with defendants, or
> where defendants were when they made their alleged
> misrepresentations, or the exact date of each
> communication.

Rowen Petroleum, 2009 WL 1085737, at *6 (Rowen I).  Although the

plaintiff amended his complaint[10] after the Court entered its

opinion on the motion to dismiss, the fraud claims in the amended

complaint provide more, not less, specificity concerning

plaintiff's allegations of fraud.  In short, the issue of the

adequacy of the fraud allegations in plaintiff's pleadings has

already been decided by the court, is the law of the case, and

will not be readdressed here.

---

[10]    As we noted previously, the plaintiff filed a third and
then fourth amended complaint after the Court issued its opinion
on defendant's motion to dismiss plaintiff's second amended
complaint.  Defendants' are seeking summary judgment on
plaintiff's claims in his fourth amended complaint.

### b.   Common Law Fraud Claim

Of course, the standard of proof for a motion for summary judgment is higher than that for a motion to dismiss. The standard for a motion to dismiss is "... whether the claimant is entitled to offer evidence to support the claim," Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1969 n. 8, 167 L.Ed.2d 929 (2007), whereas the standard for a motion for summary judgment is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex, 477 U.S. at 330; Fed. R. Civ. P. 56(c); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (stating that on a motion to dismiss, the court presumes that allegations embrace specific facts that are necessary to support the claim, but in response to a summary judgment motion, the plaintiff can no longer rest on such mere allegations but must set forth specific facts by affidavit or other evidence) (citations omitted).

Here, Defendants also argue that plaintiff has failed to meet the elements of a fraud claim.  In order to state a claim for intentional misrepresentation under New Jersey law, a plaintiff must allege: (1) a material misrepresentation of a

presently existing or past fact; (2) knowledge or belief by
defendant of its falsity; (3) an intention that the plaintiff
rely upon the fact; (4) the plaintiff's reasonable reliance upon
it; and (5) resulting damages.  See Gennari v. Weichert Co.
Realtors, 148 N.J. 582, 691 A.2d 350, 367 (1997).

        Plaintiff must prove a claim of fraud by clear and
convincing evidence.  See 539 Absecon Blvd., L.L.C. v. Shan
Enterprises Ltd. Partnership, 406 N.J.Super. 242, 269, 967 A.2d
845, 861 (App.Div. 2009); Foley, Inc. v. Fevco, Inc., 379
N.J.Super. 574, 585, 879 A.2d 1242, 1249 (App.Div. 2005).
Proving by clear and convincing evidence is a higher burden than
proving by a preponderance of the evidence.  See Allentown Mack
Sales and Service, Inc. v. N.L.R.B., 522 U.S. 359, 376, 118 S.Ct.
818, 827 (1998) ("Preponderance of the evidence" and "clear and
convincing evidence" describe well known, contrasting standards
of proof."); Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct.
1804, 1809 (1979) (stating that clear and convincing evidence is
an intermediate standard between preponderance of the evidence
and proof beyond a reasonable doubt).  Plaintiff's burden at
trial and, therefore at summary judgment, is higher and the Court
must "view the evidence presented through the prism of the
substantive evidentiary burden." Quaciari v. Allstate Ins. Co.,
998 F.Supp. 578, (E.D.Pa. 1998) (quoting Anderson, U.S. at 254).
At the motion for summary judgment stage, plaintiff's burden of

proof is higher and it must be determined whether the undisputed facts show that defendant is entitled to judgment as a matter of law.

It is not disputed that in April 2007, after an agreement of sale was signed between HTS and Tan Holdings, a packet containing a letter with various exhibits was sent to Rowen seeking his consent to the assignment of lease from HTS to Tan Holdings, or an affiliated entity.  The letter stated that HTS had entered into a contribution and asset purchase agreement with Tan Holdings, pursuant to which it would assign substantially all of its assets to Tan Holdings or an affiliate, including the Lease.  Included with the packet was a projected opening balance sheet for Tan Holdings, based on HTS's balance sheet as of March 31, 2007, which showed total assets in the amount of $62,497,314, and included an entry under its assets for "goodwill" valued at $41,891,756.  Goodwill was by far Tan Holdings' largest asset.  Removing goodwill from Tan Holding's total assets would leave generally cash and other tangible assets in the amount of $20,605,558 which amount was not enough to cover total liabilities in the amount of $23,997,064.[11]  Rowen testified that he understood that goodwill was an intangible asset and represented a sizable piece of Tan Holding's total

---

[11]   Total liabilities and members' equity totaled $62,497,314.

assets.  Rowen testified that he did not request any additional
financial information regarding the assignee and did not seek
advice from any financial expert.  Nonetheless, Ralph Venuto, Jr.
testified that at or near the time of the closing on the sale of
assets from HTS to Tan Holdings, that Tan Holdings was "valued at
over $8 million."

         On May 4, 2007, Rahn sent Rowen an email requesting his
consent to the assignment of lease from HTS to HT Systems, LLC.[12]
Rowen did not make any note of the change and neither did Rahn.
Rowen replied that there was no signature line for Rowen
Petroleum Properties LLC, and quoted the current delinquent
amount of rent.  Further email exchanges between Rahn and Rowen
from May 4, 2007 to May 9, 2007, show that Rowen wanted
assurances that HTS would remain responsible for any default rent
amounts prior to the date of the asset sale, and that he did not
want to be left "holding the bag" if the franchisee failed,
stating "Franchisee will be gone, new franchisor will claim they
bought assets and you (selling HTS) will have disbursed assets to
shareholders and corporation will have no money.  I have been
through this before."  The email exchange included an attachment

--------------------------------------------------

         [12]    Rahn testified that he told Rowen in a telephone
conversation that the name of the assignee changed, although
Rowen disputes this fact.  There is no testimony from Rowen that
he discussed the change of assignee over the telephone with Rahn
although he admits to receiving the emails noting the change.
The emails from Rahn do not memorialize the conversation
regarding the change in assignee.

of the proposed assignment between HTS as assignor and HT Systems
LLC as assignee.

Another email exchange occurred during May 11, 2007 to
May 14, 2007, regarding the timing of the signing of the
assignment.  During that exchange, on May 11, 2007, Rowen writes
to Rahn that he needs the assignment modified as discussed to
have the assignee agree to be responsible for all the lease
obligations "(before and after sale of assets)."  On May 11,
2007, Rahn sent an email to Rowen stating that his request was
added to Section 1 of the assignment, and attached a copy of the
assignment.  The attached assignment was between HTS as assignor
and HT Systems LLC as assignee.  The revised Section 1 appears to
have the effect of making the assignee responsible for rents as
if the assignee "had been the original party designed as
'Tenant.'"  Rowen appears to agree to the terms in the assignment
of lease.

Although Rahn's email refers to "HT Systems, LLC" not
"Tan Holdings," and although the assignee on the assignment of
lease is "HT Systems, LLC" not "Tan Holdings," the issue appears
not to be whether Rowen was advised that "HT Systems, LLC" was a
substitute for "Tan Holdings," which it clearly was, and for
which Rowen clearly had notice, but rather whether Rowen was
advised that "HT Systems, LLC" was not going to inherit HTS's
assets.  Rowen has provided evidence that he believed the leases

would be assigned to an entity that held HTS's assets and held
this belief through the negotiations of the assignment.  Rahn did
not address Rowen's email requesting that the assignee agree to
be responsible for all the lease obligations "(before and after
sale of assets)" indicating that Rowen believed the assignee
would inherit HTS's assets.  Further, there is no evidence that
plaintiff received any financial or other information regarding
HT Systems that would have alerted him that it, rather than Tan
Holdings, was going to assume the lease but not inherit HTS's
assets.

Defendants argue that Rowen had notice of the change to
"HT Systems, LLC" from Rahn's emails and from the assignment
itself.  Defendants further argue that there can be no fraud
because the emails and assignment clearly state that "HT Systems,
LLC" is the assignee and Rowen failed to read the agreement or
notice the change.  Although Rowen requested and negotiated
certain changes in the lease, he did not raise any question at
all regarding the change in assignee.  Defendants point out that
Rowen is a lawyer and a savvy businessman and, therefore, held to
a higher responsibility to review contracts prior to signing.

As stated in this Court's prior opinion, under New
Jersey law, the general rule is that a party has a duty to read
and examine a contract that he signs, and "one who does not
choose to read a contract before signing it, cannot later relieve

21

himself of its burdens." Henningsen v. Bloomfield Motors, Inc., 161 A.2d 69, 84 (N.J. 1960). The exception to this rule is fraud. Id.; Harr v. Allstate Insurance Co., 225 A.2d 228, 207 (N.J. 1969) (discussing the fraud exception to the general rule of a duty to read); Dunston Lithograph Co. v. Borgo, 84 N.J.L. 623, 625, 87 A. 334, 335 (N.J. Err. & App. 1913); see also Peter W. Kero, Inc. v. Terminal Const. Corp., 6 N.J. 361, 369, 78 A.2d 814, 817-18 (N.J. 1951). The fraud exception is applicable only if the party reasonably relied on the allegedly fraudulent representation. See, e.g., Andrea v. Metropolitan Life Ins. Co., 2000 WL 35361960, *3 (D.N.J. 2000) (finding fraud exception not applicable where plaintiff discovered eight years after he signed an insurance policy that the insurance sale representative's statements were false because "a quick perusal of the Policy would have alerted the average person under these circumstances that the terms of the Policy contradicted the alleged representations.").

As further stated in the Court's earlier opinion, it cannot be concluded as a matter of law that plaintiff has failed to state a claim for reasonable reliance. The following paragraph was quoted from Peter W. Kero, Inc. v. Terminal Const. Corp., in the earlier Opinion and is still apt:

> [W]here a party is induced to sign a paper as a result
> of a false representation that it will be filled in or
> prepared as orally agreed, the intentional omission of

22

terms required by the authorization to be included, or
the inclusion of terms not so authorized, constitutes
fraud invalidating the instrument as between the
parties thereto, notwithstanding that the party signing
was negligent in relying on the misrepresentation. The
rule is that where one party to an oral agreement
entrusts the other with the obligation of reducing it
to writing, he has a right to rely upon the
representation that it will be drawn accurately and in
accordance with the oral understanding between them.
The presentation of the paper for signature is in
itself a representation that the terms of such oral
agreement have been or will be embodied in the writing.
It is the policy of the law to protect the unwary and
foolish as well as the vigilant from the wiles and
artifices of evil-doers and negligence in trusting a
representation will not, according to the greater
weight of authority, excuse a positive willful fraud,
and parole evidence is admissible to show such fraud.
The party perpetrating the fraud should not be
permitted to say that he should not have been believed
or trusted.

Peter W. Kero, Inc. v. Terminal Const. Corp., 78 A.2d 814, 818

(N.J. 1951); Bonnco Petrol, Inc. v. Epstein, 560 A.2d 655, 661

(N.J. 1989) (finding that buyers of real estate relied upon

representation that contract would be based on sample contracts

so that their failure to read the contract did not excuse

realtor's failure to inform buyers of the added term).

        Whether it was reasonable for plaintiff to rely on the

prior writings and representations and not read the assignment of

lease before signing the acknowledgment is a close question, but

ultimately, a determination that cannot be made as a matter of

law.  Rather, it would be for a jury to weigh the testimony and

make a credibility determination whether it was reasonable for

Rowen to rely on representations that the lease would be assigned to an entity that would inherit HTS's assets rather than question the change in assignee or ask for further financial information, taking into consideration Rowen's business and law background, as well as his ability to negotiate certain terms regarding past due rents.  Therefore, taking all inferences in the light most favorable to the plaintiff, there is a genuine dispute of material fact whether defendants made a material misrepresentation.  See Celotex, 477 U.S. at 330; Fed. R. Civ. P. 56(c).  Defendant's motion for summary judgment on Counts Six and Seven of plaintiff's fourth amended complaint will be denied.

### 2.  Rescission of Assignment of the Lease

Plaintiff has requested rescission of the assignment of lease as an equitable remedy.  "Where a party has gained an unfair advantage by virtue of a fraudulent misrepresentation, and monetary damages alone will not satisfy the injury sustained by the aggrieved party, courts have looked to the equitable remedy of rescission to eliminate the damage." Rutgers Cas. Ins. Co. v. LaCroix, 194 N.J. 515, 527, 946 A.2d 1027, 1034-35 (N.J. 2008) (citing Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 626-27, 432 A.2d 521 (1981)).  "The object of equitable remedies such as ... rescission is to restore the parties to the status quo ante and prevent the party who is responsible for the misrepresentation from gaining a benefit." Id. (quoting Bonnco

24

Petrol, Inc. v. Epstein, 115 N.J. 599, 612, 560 A.2d 655 (1989))
(other citations omitted).  "Ordinarily, contracts may only be
rescinded [or reformed] where there is original invalidity,
fraud, failure of consideration or a material breach."  Farris v.
County of Camden, 61 F.Supp.2d 307, 336 (D.N.J. 1999) (quoting
Notch View Assocs., A.D.S. v. Smith, 260 N.J.Super. 190, 197, 615
A.2d 676 (Law Div. 1992), citing Bonnco Petrol, 115 N.J. at 611,
560 A.2d 655).  "[E]ven where the grounds for rescission [or
reformation] exist, the remedy is discretionary and will not be
granted where the claimant has not acted within a reasonable time
or where there has been substantial performance."  Id. (citing
Notch View, 260 N.J.Super. at 198, 615 A.2d 676 (citations
omitted).  "A plaintiff seeking rescission or reformation must
prove by clear and convincing evidence his right to the equitable
remedy."  Id.  (citing Esoldi v. Esoldi, 930 F.Supp. 1015, 1021
(D.N.J. 1996) (Bassler, J.)).

        Defendants state that plaintiff's claim for rescission
should be dismissed because plaintiff cannot prove its fraud
claim.  Since plaintiff's claim of fraud has not been dismissed,
this is not a ground upon which to dismiss the claim at the
summary judgment stage.  Defendants also state that even where
grounds for rescission exist, the remedy will not be granted
where there has been substantial compliance.  Defendants,
however, have not set forth any facts in support of a claim that

25

there has been substantial compliance with the terms of the
contract.  In order for the Court to engage in meaningful review,
the defendant must outline what facts support its claim that the
contract should not be rescinded on the ground that there has
been substantial compliance.  Defendants did not do this in their
motion for summary judgment and, therefore, the motion to grant
summary judgment on plaintiff's claim for rescission will be
denied without prejudice.

      3.   **Fraudulent Conveyance**

      Plaintiff has brought a claim for fraudulent conveyance
against defendants under the Uniform Fraudulent Transfer Act.
<u>See</u> N.J.S.A. 25:2-20, et seq.  Plaintiff claims that the transfer
of assets from HTS to Tan Holdings and the distribution of HTS's
remaining cash to its shareholders, knowing that HTS was
primarily liable under the lease for the remainder of the terms
and any renewal terms exercised, constituted a fraudulent
conveyance.[13]

      Pursuant to N.J.S.A. 25:2-25, "A transfer made or
obligation incurred by a debtor is fraudulent as to a creditor,
whether the creditor's claim arose before or after the transfer
was made or the obligation was incurred, if the debtor made the
transfer or incurred the obligation: a. With actual intent to

---

     [13]  Unlike the common law claims, this statutory claim is
clearly governed by New Jersey law.

hinder, delay, or defraud any creditor of the debtor." See N.J.S.A. 25:2-25.  The purpose of the Fraudulent Transfer Act is to prevent a debtor from placing his or her property beyond a creditor's reach.  In re Wintz Companies, 230 B.R. 848, 859 (8th Cir. 1999).

Under New Jersey law, to determine whether a transfer constitutes a fraudulent conveyance, there are two relevant inquiries: (1) "whether the debtor [or person making the conveyance] has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance"; and (2) "whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor." Jecker v. Hidden Valley, Inc., 422 N.J.Super. 155, 164, 27 A.3d 964, 969 (App.Div. 2011).  "Transfers calculated to hinder, delay, or defeat collection of a known debt are deemed fraudulent because of the debtor's intent to withdraw the assets from the reach of process." Id.  The inquiries are fact-specific and the person seeking to set aside the conveyance bears the burden of proving actual intent by clear and convincing evidence.  Id.

In reviewing the specific circumstances surrounding an alleged fraudulent transfer, courts look to factors commonly referred to as "badges of fraud." These "badges of fraud" factors include:

a.   The transfer or obligation was to an insider;

b.   The debtor retained possession or control of the
     property transferred after the transfer;

c.   The transfer or obligation was disclosed or
     concealed;

d.   Before the transfer was made or obligation was
     incurred, the debtor had been sued or threatened
     with suit;

e.   The transfer was of substantially all the debtor's
     assets;

f.   The debtor absconded;

g.   The debtor removed or concealed assets;

h.   The value of the consideration received by the
     debtor was reasonably equivalent to the value of
     the asset transferred or the amount of the
     obligation incurred;

i.   The debtor was insolvent or became insolvent
     shortly after the transfer was made or the
     obligation was incurred;

j.   The transfer occurred shortly before or shortly
     after a substantial debt was incurred; and

k.   The debtor transferred the essential assets of the
     business to a lienor who transferred the assets to
     an insider of the debtor.

Id. 422 N.J. Super at 164, 27 A.3d at 969-970(citing N.J.S.A.

25:2-26. "The proper inquiry is whether the badges of fraud are

present, not whether some factors are absent." Id. 422 N.J.

Super at 164-165, 27 A.3d at 970.

     Applying the above factors, the facts support:

a.   The transfer of assets was to Tan Holdings, the
     purchaser of HTS, and to the shareholders of HTS; the

transfers were to affiliated entities or insiders;

b. After the transfer to Tan Holdings, HTS was paid $40,000,000 in cash and held a 25% equity in Tan Holdings;

c. The transfer was initially disclosed but was restructured in a way that may have been deceptive to a creditor;

d. Before the transfer, Rowen had advised HTS through Rahn that the tenant under the lease was in default and possibly experiencing financial trouble; Rowen asked for assurances that he would not be left "holding the bag" by asking that HTS remain responsible for the lease payments; although stopping short of a threat of litigation, a creditor expressed concern that he might be harmed financially by the transfer;

e. Plaintiff has stated that HTS has sold all its assets and the sales income disbursed to the shareholders; HT Systems has filed for bankruptcy, and it appears that Tan Holdings is insolvent with a number of judgments against it;[14]

f. There is no evidence that the individual defendants absconded, although HTS is no longer a going concern;

g. HTS sold all of its assets under circumstances where a creditor may have believed falsely that the assets had been transferred to an entity which had assumed a substantial ongoing obligation to the creditor;

h. There is insufficient evidence in the record to determine the exact value of the assets transferred and received, but HTS made a substantial payout to its principals, the purchaser is insolvent, and a related

---

[14] According to the Certification of Ronald L. Davidson, Esq., Tan Holdings is insolvent with a number of judgments against it. Mr. Davidson states that because of Tan Holdings' insolvency, plaintiff has agreed with Tan Holdings to entry of a consent judgment in favor of plaintiff and against Tan Holdings for the amount due under the lease reduced to present value and for dismissal of all claims against both Hollywood Tans, LLC (Tan Holdings, LLC's subsidiary) and HT Systems. See Section I, supra.

29

entity which assumed an obligation previously owed by HTS was merely a shell;

i.   HTS appears to be insolvent after it sold its assets and distributed cash to its shareholders; HTS forfeited its stock in Tan Holdings and earned no money from the "earn-out" provision in the asset purchase agreement;

j.   The transfer occurred shortly after notice was provided to HTS by Rowen of the rental debt and shortly after a shell corporation assumed HTS's financial obligations to the plaintiff; and

k.   After HTS sold its assets, it paid $750,000 to Rahn, and distributed the remaining cash (after payment of bills, etc.) to its shareholders;[15] Ralph, Jr. and his brother, Richard Venuto, each received approximately $4 million.

Based on the above, there are adequate "badges of fraud" to permit plaintiff's claim of fraudulent conveyance to survive summary judgment.  Although HTS remained liable on Rowen's lease if HT Systems defaulted, and HTS and the individual defendants knew of the past due rent owned by Rowen's tenant, no reserve for the default claim was set aside to cover the claim. Moreover, if Plaintiff prevails on its fraud claims, it would appear that the assets were transferred, and a shell corporation substituted, to leave Plaintiff "holding the bag" just as its principal has feared.  Therefore, defendant's motion for summary judgment as to Count Eight, fraudulent conveyance, will be denied.

---

[15]   HTS's shareholders at the time of the asset sale were: Ralph, Sr. and Carol Venuto (25% collectively), Ralph, Jr. (25%), Richard Venuto (25%) and Carol Rebbecchi (25%).

IV.   **CONCLUSION**

For the reasons expressed above, defendants' motion for partial summary judgment as to plaintiff's fraud claims (Counts Six, and Seven) and fraudulent conveyance claim (Count Eight) will be denied.  Defendants' motion as to plaintiff's claim regarding rescission of the Lease (Count Two) will be denied without prejudice with leave to refile as to the substantial compliance issue.  Defendants' motion as to plaintiff's claim of individual member liability (Count Five) will be denied without prejudice with leave to re-file which motion shall include an appropriate choice of law analysis.  Plaintiff's cross motion for partial summary judgment as to its breach of contract claims (Counts One and Three) will be denied without prejudice with leave to re-file which motion shall include an appropriate choice of law and venue analysis.

An appropriate Order will be entered.


Date: December 23, 2011                  Noel L. Hillman

At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

31