IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROWEN PETROLEUM PROPERTIES, LLC, | |
| Plaintiff, | CIVIL NO. 08-4764(NLH)(AMD) |
| v. | |
| HOLLYWOOD TANNING SYSTEMS, INC., HOLLYWOOD TANS, LLC, HT SYSTEMS, LLC, TAN HOLDINGS, LLC, RALPH VENTO, SR., RALPH VENTO, JR., DAVID N. RAHN, INDIVIDUAL DEFENDANTS 1 THROUGH 10, | **OPINION** |
| Defendants. | |

**APPEARANCES:**
RONALD L. DAVISON
RICHARD THOMAS WELCH
STARR, GERN, DAVISON & RUBIN, PC
105 EISENHOWER PARKWAY
ROSELAND, NJ 07068
     *On behalf of Plaintiff,*

JOHN H. SCHMIDT , JR.
LINDABURY, MCCORMICK & ESTABROOK, PC
53 CARDINAL DRIVE
PO BOX 2369
WESTFIELD, NJ 07091-2369
     *On behalf of Defendants Hollywood Tanning Systems, Inc.,*
     *Ralph Venuto, Sr., Ralph Venuto, Jr., David N. Rahn*[1]

**HILLMAN, District Judge**

Before the Court are a motion for partial summary judgment

filed by Defendants Hollywood Tanning Systems, Inc. ("HTS"), David

---

     [1]     Defendants Ralph Venuto, Sr. and Ralph Venuto, Jr. were
incorrectly named as Ralph Vento, Sr. and Ralph Vento, Jr.

R. Rahn, Ralph Venuto, Jr., and Ralph Venuto, Sr.[2], and a cross motion for partial summary judgment filed by plaintiff Rowen Petroleum Properties, LLC ("Rowen").  For the reasons expressed below, defendants' motion regarding plaintiff's claims for rescission of the lease and individual member liability will be granted.  Plaintiff's cross motion for partial summary judgment as to his breach of contract claims will be granted, but his request for attorneys' fees will be denied without prejudice.

**I.   BACKGROUND**

This matter concerns the lease of space in a mall by a Hollywood Tans franchise.  The factual background of this case has been provided in previous Opinions and will not be repeated here. See Rowen Petroleum Prop., LLC v. Hollywood Tanning Sys., Inc., No. 08-4764, 2010 WL 936217 (D.N.J. Dec. 23, 2011) (Hillman, J.) (denying motion and cross motion for partial summary judgment) ("Rowen III"); Rowen Petroleum Prop., LLC v. Hollywood Tanning Sys., Inc., No. 08-4764, 2010 WL 936217 (D.N.J. March 12, 2010) (Hillman, J.) (granting motion to amend complaint) ("Rowen II"); and Rowen Petroleum Prop., LLC v. Hollywood Tanning Sys., Inc., No. 08-4764, 2009 WL 1085737 (D.N.J. April 20, 2009) (Hillman, J.) (denying motion to dismiss) ("Rowen I").

---

[2] During the pendency of this litigation, Ralph Venuto Sr. passed away and his Estate has been litigating this matter.

## II.   JURISDICTION

As stated previously, this Court exercises jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.  See id.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Indus. Crating Co., 358 F.3d

241, 247 (3d Cir. 2004)(quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Id.</u> Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. <u>See Iberia Foods Corp. v. Romeo Jr.</u>, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

**B.   Rescission Claim (Count 2)**

Plaintiff does not oppose the dismissal of its rescission claim, Count 2. Therefore, defendants' motion for partial summary judgment with regard to this claim will be granted.[3]

---

[3] Defendants seek the grant of summary judgment with respect to Count 2 of plaintiff's Complaint. In its Response in

### C.   Breach of Contract (Counts 1 and 3)

Defendants do not object to the grant of summary judgment on plaintiff's breach of contract claims, Counts 1 and 3, and therefore, plaintiff's cross motion will be granted on these claims.  Defendants do, however, object to the grant of attorneys' fees in connection with the breach of contract claim.

The Court will deny plaintiff's request for attorneys' fees at this time.  Plaintiff will be permitted to file an appropriate motion for attorneys' fees pursuant to Local Rule 54.2, including an appropriate attorney affidavit attaching all relevant documents. See L.R. 54.2.

Thus, the only remaining claim in dispute on the pending summary judgment motions is whether plaintiff may pierce the corporate veil and hold the individual defendants liable.  Before the Court addresses that question, however, the threshold issue of the choice of law must be addressed.

---

Opposition [Doc. 164],plaintiff explicitly states that it "does not oppose the dismissal of the rescission claim (second count)[.]" (Pl.'s Resp. Opp'n at 4.)  A grant of summary judgment on a claim and the dismissal of a claim, however, are procedurally distinct.  See Jones v. N.J. Dep't Corrections, No. Civ.A.04-4052, 2009 WL 3128351, at *1 n.2 (D.N.J. Sept. 28, 2009) (Greenaway, J.) (internal citation omitted) ("The grant of summary judgment and the dismissal of the Complaint, with prejudice, are inconsistent.").  Given the context of the present proceedings, the Court treats plaintiff's withdrawal of opposition as a grant of summary judgment — rather than a dismissal — of Count 2.

D.   **Choice of Law**

In its previous Opinions, the Court raised the issue over which state's law should apply to the Lease because the "Lease Agreement . . . contains a choice of law provision which indicates that Ohio law shall apply." Rowen Petroleum, 2009 WL 1085737, at *7 (Rowen I).  Previously, the parties did not directly address the choice of law issue raised by the Court with regard to plaintiff's claims of breach of contract and piercing the corporate veil.  In the latest round of motions, the parties have now provided the necessary briefing and both argue that New Jersey law applies.  The Court agrees.[4]

Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination. Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 165 (3d Cir. 1999); Instructional Sys., Inc. v. Computer Curriculum

---

[4] As noted in its earlier Opinion, plaintiff appears to have waived any venue provision that might require the matter be litigated in Ohio by filing his case in this District.  See Kubis & Perszyk Assoc., Inc. v. Sun Microsystems, Inc., 680 A.2d 618, 624 (N.J. 1996) (extensively reviewing the case law nationwide regarding forum selection clauses, and indicating that the cases align with the Restatement (Second) of Conflict of Laws § 80 (1969), which provides, "The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable"); Koresko v. Nationwide Life Ins. Co., 403 F. Supp. 2d 394, 400 (E.D. Pa. 2005) ("Where parties enter into a contract and merely consent to jurisdiction in a particular forum, they do not preclude the jurisdiction of other forums.").  In any event, there is no dispute that venue is proper in this District.

Corp., 614 A.2d 124, 133 (N.J. 1992) (following the Restatement (Second) of Conflicts of Laws § 187 (1969), which provides that "the law of the state chosen by the parties will apply, unless either: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties").

The elements needed to pierce the corporate veil and hold corporate principles liable are the same under both New Jersey and Ohio law.  Compare Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 149 (3d Cir. 1988) (Under New Jersey law, "the corporate veil may be pierced only where (1) "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent" and (2) "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.")(citing State, Dep't of Env't Prot. v. Ventron Corp., 94 N.J. at 499-501, 468 A.2d at 164-65 (1983)), with Carter Jones Lumber Co. v. LTV Steel Co., 237 F.3d 745, 748 (6th Cir. 2001) (Under Ohio law, the corporate veil may be pierced if: "(1) control over the

corporation by those to be held liable was so complete that the corporation had no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong") (citing <u>Belvedere Condo. Unit Owners' Assoc. v. R.E. Roark Cos., Inc.</u>, 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993)).

Ohio has no connection with the present litigation. Plaintiff is a citizen of Wisconsin, the defendants are citizens of New Jersey, and the mall is located in Pennsylvania.  It appears that Ohio law was chosen in the lease agreement because the original owner of the Pittsburgh mall was a Ohio limited liability company.  As both parties state, Ohio has no substantial relationship to the parties or to the transactions.  <u>See Instructional Sys.</u>, 614 A.2d at 133.  Accordingly, New Jersey law will apply.

**E.  Individual Member Liability/Piercing the Corporate Veil**

Although plaintiff raises a claim for individual member liability under a theory of piercing the corporate veil, plaintiff has not been clear with respect to which corporate veil he seeks to pierce.  In his Fourth Amended Complaint, Rowen states that HT Systems, LLC ("HT Systems") was undercapitalized and lacked the

financial resources to assume and discharge its obligations under
the Lease.  However, as explained by the Court in its previous
Opinion on September 9, 2009, HT Systems was administratively
terminated due to a filing of suggestion of bankruptcy and then
subsequently dismissed by plaintiff on June 22, 2011.[5]  See Rowen
(III), 2011 WL 6755838, at *3.  On June 22, 2011, judgment by
consent was entered against defendant Tan Holdings, LLC ("Tan
Holdings") in favor of plaintiff, and defendant Hollywood Tans,
LLC ("Hollywood Tans")[6] was dismissed upon plaintiff's voluntary
dismissal of all claims.  Id.  Therefore, the only remaining
corporate defendant left in this suit is HTS.  Id.

It appears from plaintiff's moving papers that he seeks to
pierce the corporate veil of HTS.  Plaintiff alleges that Messrs.
Venuto and Rahn siphoned off approximately $40 million from HTS —

---

[5]  Hollywood Tans is distinct entity from HTS, Tan Holdings,
and HT Systems.  Hollywood Tans is the sole controlling member of
HT Systems.  (Fourth Am. Compl. ¶¶ 9, 29, 36.)  Hollywood Tans
was terminated from suit alongside HT Systems on June 22, 2011.
[Doc. 141].

[6] It is not clear that the individual defendants were owners
of HT Systems.  There is testimony from David Rahn that the
"Venuto family" took an "equity position" in "the buyer" in the
amount of $10 million dollars or approximately 25% of the
company.  Rahn also testified that if the buyer "performed going
forward at a certain level, the Venutos would, as part of the
purchase price, get X amount of dollars."  This was clarified by
defendants that it was HTS (not the Venutos) that held the 25%
interest in Tan Holdings(the buyer), and that HTS would receive
additional consideration if Tan Holdings reached certain
performance levels.  Tan Holdings was valued at over $8 million
dollars at that time.  These facts are not disputed by plaintiff.

9

an amount received from the sale of its assets.  As a result of
this action, HTS was left with only a minority equity interest in
Tan Holdings, which was subsequently determined to be worthless.
Plaintiff also alleges that defendants deliberately failed to
create and maintain a reserve for payment of rent due for which
HTS remains liable.  Plaintiff states that Rahn was identified as
the contact regarding the assignment request, and received
$750,000 for his services to HTS.

Plaintiff argues that, since the Court in its previous
Opinion did not dismiss his fraud or fraudulent conveyance claims,
his claim to hold the individual members liable by piercing the
corporate veil should not be dismissed either.  While facts
alleged in support of plaintiff's fraud claims may be relied upon
for his claim to pierce the corporate veil, the existence of fraud
is only one aspect — albeit an important one —  of a claim to
pierce the corporate veil.  See Lyon v. Barrett, 89 N.J. 294, 300
(1982) ("In the absence of fraud or injustice, courts generally
will not pierce the corporate veil to impose liability on the
corporate principals.").

Under New Jersey law, personal liability will only be imposed
if it is demonstrated that the officer or director disregarded the
corporate form and "utilize[d] the corporation as a vehicle for
committing equitable or legal fraud."  Marascio v. Campanella, 298
N.J.Super. 491, 502, 689 A.2d 852, 858 (1997).  "New Jersey law

10

permits a court to ignore a corporation's separate entity in order to prevent it 'from being used to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law.'" Melikian v. Corradetti, 791 F.2d 274, 281 (3d Cir. 1986) (citing N.J. State Dep't of Env't Prot. v. Ventron, 94 N.J. 473, 468 A.2d 150, 164 (1983)).  "An individual may be liable for corporate obligations if he was using the corporation as his alter ego and abusing the corporate form in order to advance his personal interests."[7] Sean Wood, LLC v. Hegarty Grp., Inc., 422 N.J.Super. 500, 517, 29 A.3d 1066, 1076 (App.Div. 2011) (citing Tsai v. Bldgs. by Jamie, Inc. (In re Blds. by Jamie), 230 B.R. 36, 42 (Bankr. D.N.J. 1998)).  "Veil piercing is an equitable remedy whereby the court disregards the corporate existence and holds the individual principals liable for the corporation's debts."  Id. (citing In re Blatstein, 192 F.3d 88, 100 (3d Cir. 1999); Bd. of Trs. v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002)). Factors to consider in determining whether to pierce the corporate veil include:

> gross undercapitalization[8] ... failure to observe

---

[7] "Before invoking an alter ego theory to pierce the corporate veil, evidence must first establish an independent basis to hold the corporation liable." Id. (citing In re Casini, 307 B.R. 800, 811 (Bankr. D.N.J. 2004)).  Here, defendants do not dispute plaintiff's claim that HTS breached the lease.

[8] "Undercapitalization means capitalization very small in relation to the nature of the business of the corporation and the

> corporate formalities, non-payment of dividends, the
> insolvency of the debtor corporation at the time,
> siphoning of funds of the corporation by the dominant
> stockholder, non-functioning of other officers or
> directors, absence of corporate records, and the fact
> that the corporation is merely a facade for the
> operations of the dominant stockholder or stockholders.

Id. (citations omitted); see also Trs. of Nat'l Elevator Indus.

Pension, Health Benefit & Educ., 332 F.3d 188, 194 (3d Cir. 2003)

(citing similar factors under federal alter ego theory).

Plaintiff has presented no facts that the individual

defendants used HTS as their alter ego or otherwise disregarded

the corporate form to commit fraud.  For example, plaintiff has

not presented any evidence that HTS was grossly undercapitalized,

failed to observe corporate formalities, failed to pay dividends,

was insolvent, maintained non-functioning officers or directors,

or failed to maintain corporate records.  Although the facts show

that HTS's assets were assigned to Tan Holdings, while the leases

were assigned to HT Systems, plaintiff has not come forward with

evidence that any of the individual defendants knew that HT

_____

risks ... attendant to such businesses.  The adequacy of capital
is to be measured as of the time of formation of the corporation.
A corporation that was adequately capitalized when formed, but
which subsequently suffers financial reverse is not
undercapitalized.... Adequate capitalization is a question of
fact that turns on the nature of the business of the particular
corporation[.]" Canter v. Lakewood of Voorhees, 420 N.J. Super.
508, 520, 22 A.3d 68, 76 (App. Div. 2011) (citations and internal
quotation marks omitted).

Systems was undercapitalized.  The evidence indicates that ACI
Capital, a private equity firm in New York City, formed the deal
with Tan Holdings and HT Systems.  Rahn testified that the terms
of the deal formed by ACI were not disclosed to him or the
Venutos, and that he personally found out about the deal after it
closed on or around June 22, 2007.  Plaintiff has not presented
evidence that could show that defendants' intention in selling
HTS's assets was to commit fraud.  Rather, based on Rahn's
undisputed testimony, the Venutos decided to sell HTS after Ralph,
Sr. was diagnosed with terminal cancer and wanted to provide for
his children after his death.

In sum, plaintiff has not presented evidence that HTS was a
mere facade for the operations of defendants or that any of the
individual defendants failed to observe corporate formalities or
otherwise dominated the corporation.  Plaintiff has not presented
evidence that any of the defendants were directly involved in the
formation of Tan Holdings or HT Systems or knew that those
companies were undercapitalized.  HT Systems and Tan Holdings are
not subsidiaries of HTS.  While HTS may no longer have adequate
assets, this fact alone does not provide grounds for piercing the
corporate veil.  See Lutyk, 332 F.3d at 197 ("Companies commonly
become insolvent, then bankrupt; piercing the corporate veil is
an exception reserved for extreme situations, rather than the
rule."); Port Drivers Fed'n 18, Inc. v. All Saints Exp., Inc.,

13

757 F.Supp.2d 443, 458 (D.N.J. 2010) ("While plaintiffs have shown that All Saints is grossly undercapitalized, does not pay dividends, and does not have a functioning board of directors, they have not established the other factors necessary to find that All Saints is a mere instrumentality of St. George.").

As such, defendants' motion for summary judgment on Count Five will be granted.

**IV.   CONCLUSION**

For the reasons expressed above, defendants' motion for partial summary judgment as to plaintiff's claim regarding rescission of the lease (Count Two) and as to plaintiff's claim of individual member liability (Count Five) will be granted. Plaintiff's cross motion for partial summary judgment as to its breach of contract claims (Counts One and Three) will be granted, but its request for attorneys' fees will be denied without prejudice.

An appropriate Order will be entered.

                                 /s/ Noel L. Hillman
                                 NOEL L. HILLMAN, U.S.D.J.

Date: September 28, 2012

At Camden, New Jersey

14